JUDGE ROBERTSON
delivered the opinion op the court:
Robert Rutherford, a citizen of Virginia, domiciled in Jefferson county, in that State, died in the year 1805, leaving children, and a will published in the year 1802, which was proved and recorded in the proper court of probate; and on the 12th of June, 1805, John Morrow, one of several nominated executors, alone accepted, executed bond, and acted as sole executor.
Apprehending some insufficiency of personal assets for the payment of debts and legacies, the testator, owning lands in Virginia, and in Lincoln (now Laurel) and in Mercer (now Anderson) counties, Kentucky, authorized his acting executors or executor to sell land in Virginia or Kentucky for supplying anjr such deficit.
A county court settlement of his fiducial accounts, made in the year 1814, brought the estate in debt to Morrow, as executor. Another like settlement in the year 1819 increased that indebtedness, and Morrow having died in the year 1820, a confirmatory and supplemental settlement between his administrator and Rutherford’s administrator, de bonis non, increased the indebtedness to a fraction over nine thousand dollars.
In the year 1833, the administrator de bonis non having been removed, William C. Worthington, of Virginia, was appointed in his place by the same county court, and executed the requisite bond, with other Virginians as his approved sureties.
*30 Morrow, before his death, had appointed Lot Pitman, of Laurel county, Kentucky, an agent to take care of a tract of six thousand four hundred and thirty-seven and one third acres of land owned by the testator in that county; and under that authority Pitman leased the land to several tenants, who occupied it until about the year 1837, when Frank Clark procured an attornment to himself.
Worthington having empowered Pitman to sell the land, he sold the whole tract to Clark and Bright in 1837. By this contract Worthington, for the consideraion of four thousand one hundred dollars, agreed to convey the legal title whenever he should satisfy the vendees that the sale was necessary for the payment of debts.
On the 8th of March, 1847, Worthington, on filing copy of the will and probate certified from the county court of Jefferson, Virginia, obtained the appointment of himself as administrator de bonis non, by the county count of Anderson, Kentucky, and executed the statutory bond with non-resident sureties; and, on the 17th of March, 1847, he, as such administrator, with the will annexed, conveyed to Bright and Clark the said tract of land, excepting about one thousand acres, which one Brown had recovered, and the relative value of which was to be deducted from about two thousand one hundred dollars of the consideration still unpaid, and not to be paid until the amount to be deducted should be adjusted.
The appellants, having been non-suited in two successive actions of ejectment, brought a third, and also filed their petition in equity, denying that the sale was made for debt, the existence of which they do not admit, denying also Worthington’s authority to sell, and charging a fraudulent combination between him and his ostensible vendees, and praying, therefore, for a cancellation of the *31 conveyance, &c. These pleadings were consolidated, and Clark, who, in the meantime, had bought Bright’s interest, traversed most of the material allegations, and pleaded in bar more than twenty years’ adverse possession.
After elaborate preparation, the circuit court dismissed the consolidated action.
The right of the appellants to sue as heirs; the jurisdiction of the Anderson county court to appoint Worthington administrator; the existence of any debt for paying which his sale was necessary; his power of'sale, and the statute of limitations, are all involved in the revision of the judgment.
There being no proof of actual fraud, and the objections to documentary authentication being answered by presumptions resulting from time and otherwise, we shall not specially notice those unavailing matters, but will confine our attention to the more essential questions raised by the pleadings as previously suggested.
1. The proof of heirship is as precise and satisfactory as so long a lapse of time, and such a great multitude of claimants, would reasonably enable such parties to obtain in any case, and the law requires no more. Before the sale of the land the legal title descended to the testator’s heirs. The devise to them of land which might remain unsold did not transform them into devisees of this tract sold by Worthington, unless his sale was void; and for vacating the sale we consider it immaterial in which character they sue, as they claim in one or the other, according to the result of the suit as to the validity of the sale.
2. It sufficiently appears, that when Worthington’s Kentucky appointment was made the testator owned land in Anderson county, and this gave an elective juris *32 diction to either Anderson or Laurel county court; and why Anderson was preferred, this court neither knows nor needs to inquire. It is no badge of fraud, and especially as we are authorized to presume that Worthington also had sold, or intended to sell, the land in Anderson.
But, waiving the positive evidence as if admitted to be sufficient, the simple exercise of jurisdiction, and long acquiescence in it without opposing evidence, are amply sufficient for the recognition of it by this court. (See Owings vs. Beall, 1 Littell, 258, and other Kentucky cases.)
3. The power to sell land for the payment of debts depended on the sole condition of a failure of personal assets to fulfill that duty. It was therefore a peremptory, and, in no sense, a discretionery power, and might, consequently, have been lawfully exercised by the acting executor in Virginia, though not in Kentucky, without probate and qualification here. A Kentucky statute of 1810, exclusively applicable to fiduciaries appointed in this State, authorized an administrator de bonis non to exercise all the powers of the deceased executor or executors. Under this enactment, Worthington had all the powrer to sell land in Kentucky which the original executor had to sell land in Virginia, unless, as urged by the counsel of the appellants, his fiducial bond was void because all the obligors were residents of Virginia; and however improvident the acceptance of the bond of nonresidents may have been, there being no law forbidding it, this court cannot adjudge it illegal. Then, whether Worthington had power to sell and convey the land in Laurel, depends on the sole question whether the payment of debts or legacies required the sale.
4. But if there was no such necessity, and the sale therefore wras void, the statute of limitations will not protect the purchasers. Their possession, though in *33 their own avowed right as owners, was, nevertheless, not adverse in law for twenty years. The executor, Morrow, had no control over the Laurel land. The title and control were exclusively in the testator’s descendants, either as his heirs or devisees, until the appointment of the personal representative in Kentucky. The executor, without power to sell, had no right to lease otherwise than as their agent or for their use, as the beneficial landlords; and the tenants were, in law, their tenants, and could not rightfully or availably attorn to any other claimant than the equitable or legal reversioner. Bright and Clark could not be considered such reversioner before the conveyance to them by Worthington, as Kentucky administrator cum testamento, and, consequently, until that time, their possession was not adverse, but inured to the benefit of the appellants, and cuts off the statute of limitations.
The executory contract of sale was void for want of any authority in Worthington, as mere administrator de bonis non in Virginia, to sell or otherwise interfere with the land in Kentucky; and as avoid sale could not be confirmed, the conveyance was the first and only valid sale, and not only the possession, but the adequacy of the consideration, must be tested by that, as the only contract of sale which passed any right, or can be judicially recognized for any purpose.
5. The only remaining question is, whether that only sale should be upheld, or should be. canceled on the pleadings and evidence in this case ? And, after what has been already said, the solution of that question depends on two subordinate questions: 1st, whether the existence of unpaid debts made the sale necessary; and 2d, whether, if not necessary, the purchasers had notice, either actual or constructive, of that fact?
*34 The settlements in Virginia, as certified, are prima facie evidence that, as late as the year 1822, the testator’s estate was indebted to Morrow, as executor, about nine thousand dollars, for advances to that amount beyond the legal assets; and by substitution, his representatives stood in the shoes of the creditors whom he thus satisfied with his own funds ; and if that balance remained unpaid in 1847, Worthington had a legal right to sell and convey the Laurel land. But on that subject, there being no other evidence, we must be governed by presumptions of fact and of law.
Forty years elapsed from the probate of the will to the date of the conveyance. The testator owned at his death a large and valuable homestead tract of land, and probably other real estate in Virginia. This was all subject to sale for the balance due to Morrow. Plis administrator, who ascertained that balance by the final settlement of 1822, must be presumed to have been anxious to collect it, and to have known the means of collection in Virginia. Eleven years elapsed from that settlement to the substitution of W. C. Worthington as the administrator de bonis non, with the wall annexed. Four years elapsed from the date of that appointment to the date of his unauthorized and void sale to Clark and Bright; and ten years elapsed from that executory sale to the date of the conveyance. Of this long and pregnant delay no explanation has been attempted. Neither Morrow’s administrator nor the superseded administrator cum testamento, have been made parties or been called to testify; nor has it been even intimated why, having urgently finished the settlement for the purpose of promptly coercing payment, which was their duty, they treacherously slumbered until this day, and have not been shown to have ever complained or even demanded payment of Worthington. These *35 facts, unopposed and unexplained, conduce to a violent, if not conclusive, presumption of law, as well as of fact,- that when Worthington abortively sold to Clark and Bright in 1837, and more especially when he conveyed to them in 1847, there was no unsatisfied debt or legacy requiring or authorizing the sale; and the legal conclusion is, that the sale and conveyance were void, unless the purchase was made in good faith, without constructive notice of that want of authority.
When a will directs the sale of real estate, if necessary, for the payment of all the testator’s debts or legacies, a purchaser at any such sale, not being presumed to know, or to be able, by reasonable diligence, to know the condition of the estate or the extent of its indebtedness, or of its assets, should be protected in his purchase whenever made in good faith, without notice, actual or constructive, of the latent fact that there was no necessity for the sale, and consequent want of authority to make it. If this were not so, prudent men would not bid a fair price at such sales. Policy and justice, therefore, have established the rule, as recognized by abundant authority in both Virginia and Kentucky.
The appellees invoke the application of this rule to their conveyance in this case; but we feel impelled to the conclusion that a court of conscience should not heed the invocation.
The purchasers saw, or should be presumed to have seen, the will, and saw that the testator’s estate, both personal and real, was large; they knew that a long time had elapsed from the testator’s death, and, therefore, as proved by the cautionary provision-in their executory contract, they had reason to apprehend that neither unpaid debts nor legacies required the sale of the Laurel land; and when they made the contract of 1847, and *36 took the conveyance, they must be presumed to have known all the facts which we know on this subject. Moreover, the consideration they agreed to give was less than one dollar an acre, and not more than half the estimated value at that time; and in 1847 they obtained the conveyance without any new or additional consideration, and then the land was worth at least twenty-five thousand dollars. As before adjudged, the last sale was the only one which Worthington had a semblance of power to make; and this being a matter of law, his vendees in 1837 are presumed to have known it. Under all these circumstances, and the only consideration being so glaringly inadequate, it seems to us that the circuit court ought to have canceled the sale and conveyance as unauthorized and constructively fraudulent.
But as there is no sufficient evidence of actual fraud, and the vendees paid to Worthington as administrator about two thousand dollars, which he may be presumed to have applied to the use of the appellants, or may be compelled to do so, equity seems to require that the appellees should be reimbursed, and should hold a lien on the land to secure restitution of the amount paid and legal interest thereon, after deducting a reasonable amount for rents and ameliorations during their occupancy of the land; and on these terms, when adjusted, restitution of possession should be decreed to the appellants, together with their costs.
In the present phase of the case, such would be the judgment of this court, and a conformable mandate would allow no further preparation on the question of an indebtedness authorizing the sale and conveyance in 1847; but as that question seems to have been comparatively overlooked or neglected, and possible injustice may be done to innocent occupants, who were not parties, we *37 have concluded, at the urgent appeal of counsel, to exercise a liberal discretion, and give leave, on the return of the cause, to take, without avoidable delay, testimony on that subject, if either party may choose to do so.
Wherefore, the judgment is reversed, and the cause remanded, for further proceedings and final decree consistent with the principles of the foregoing opinion.