## FLETCHER *v.* AMERICAN TRUST AND BANKING CO.

1. Under a will giving the executor power, should it be necessary, to raise in such way as seems best to him a sufficient amount of money to pay the debts of the testator, the executor is authorized to borrow money for the purpose of paying such debts, and to secure the loan by mortgage or security deed.
2. Where money is borrowed under such power, it is not incumbent on the lender to ascertain whether there are debts of the testator or not, the loan being made within a reasonable time after the death of the testator and the probate of the will.
3. If under such power the executor borrows more money than is necessary to pay the debts, the estate is liable to the lender for the full amount, where there is no fraud or collusion between the executor and the lender, and where the latter has no notice of the amount of the debts. The legatees must look for reimbursement to the executor individually.
4. Under the will and the commercial practice in this State, the authority to raise money as above indicated necessarily implies the power, in borrowing money, to contract to pay attorney's fees in the event it should be necessary to collect the debt by suit, such contract being, however, enforceable only when the person making the same files a plea and fails to sustain it.

Submitted June 8, — Decided July 12, 1900.

Assumpsit.    Before Judge Calhoun. . ·City court of Atlanta.
November term, 1899.            : ·

*P. F. Smith* and *R. R. Shropshire*, for plaintiff in error.
*W. D. Ellis* and *Gray, Brown & Randolph*, contra.

SIMMONS, C. J.   In August, 1892, Mrs. Fletcher made and
executed a will.   She died, and the will was probated in Oc-
tober of the same year.   In her will she appointed her husband,
A. A. Fletcher, her executor.   The first item of the will was as
follows:   "I desire that all my debts, should I owe any, be paid
as soon as practicable by my executor after my death.   He is
authorized to use any money that I may leave for this purpose,
or, should it be necessary, to raise a sufficient amount of money
for this purpose in such way as seems best to him."   By another
item of the will, the executor was given general power and con-
trol of the estate, with full authority to invest funds, change in- ·
vestments, make new investments, sell property, and buy other
property.   He was not to be required to make any inventory
of the estate or to make returns as executor, and he was author-
ized to execute any of the powers conferred "without order of
court and privately, without publication or public sale, and as
to him seems best for the beneficiaries."   Fletcher qualified as
executor, and, as such, applied to the American Trust and Bank-
ing Company for a loan of money with which to pay off the
debts of the estate, representing to the officers of the company
that the debts amounted to $4,700.   The company, on Febru-
ary 16, 1894, loaned him the money, taking his note, as exec-
utor, for $4,700, due February 16, 1899, and also a number of
coupon interest notes, with agreement that upon a failure to pay
any of these interest notes upon maturity the entire indebtedness
should become at once due.   The notes also stipulated for the
payment of ten per cent. attorney's fees in the event the notes had
to be collected by suit.   To secure these notes the executor, as
such, executed a deed to certain land in the city of Atlanta.
The interest note falling due in August, 1897, was not paid at
maturity, and, in February, 1898, suit was brought in the city
court of Atlanta, against the executor, upon the principal note ,
and upon the unpaid interest notes.   The plaintiff prayed a
general judgment against the executor, binding the estate, for

a special lien upon the land conveyed by the security deed, and for attorney's fees. The executor, answering the petition, admitted the execution of the notes and deed, but denied that the estate of his testatrix was liable for the debt. He claimed that the debt was his individual debt, and that the plaintiff had no right to a special lien on the land or to a judgment against the estate for attorney's fees. The case was submitted to the trial judge without a jury, and he passed upon all questions, both of law and of fact. The executor, in his testimony, admitted borrowing the $4,700 from the plaintiff, but testified that when he obtained the money the estate owed but $3,400. One of the officers of the company testified that the executor represented to him, when the money was loaned, that the estate owed debts to the amount of $4,700. The court rendered judgment against the estate for the principal, interest, attorney's fees, and costs, and set up the special lien on the land. The executor moved for a new trial; the motion was overruled, and the executor excepted.

Three questions are involved in this case: (1) Did the executor have power under the will to borrow money and secure the debt by deed or mortgage? (2) Having such power, could he borrow more than the amount of the debts of the testatrix, so as to make the contract binding upon the estate, not only to the amount of the debts, but to the full amount borrowed by him? (3) Was he authorized to contract for the payment of attorney's fees in the event it should be necessary to collect the debt by suit? We have no doubt that all these questions may be answered in the affirmative, under the rules governing the power given the executor by this will.

1. The will is clear and explicit that the executor had power, in case it was necessary, to raise money, in such way as seemed best to him, for the purpose of paying the debts of his testatrix. When the executor, in the administration of the assets of the estate, ascertained that it was necessary to raise money to pay the debts of the estate, he had full power to do so. It is a well-recognized principle of law, that where power is given to raise or borrow money, the power to secure the loan is necessarily implied. The will having given power to the executor to raise money to pay the debts of the estate, he had also the power to secure the loan by deed or mortgage. Otherwise, he might

have been unable to successfully execute the power expressly given him by the will. The executor had, therefore, not only the power to raise money for the purpose of paying the debts of his testatrix, but also the power to secure the loan by deed or mortgage.

2, 3. The question next arises, how much could the executor borrow, and to what extent would the estate be bound where he exceeded his authority. We agree with counsel for the plaintiff in error that the executor had power to borrow no more money than was necessary to pay the debts,—that his power was restricted to the exact amount of the debts. We do not, however, agree with him that, as the estate owed but $3,400 and the executor borrowed $4,700, the estate was liable for $3,400 only, the balance being the individual debt of the executor. Were this the correct view of the law, it would put upon every lender of money to an executor with similar powers, and upon every purchaser from an executor who had power to sell to pay debts, the burden of inquiring into the amount and the validity of the debts of the estate. The law does not cast such a burden upon lenders or purchasers dealing with executors who have powers such as those given in this will. Where such powers are given, the testator constitutes the executor his agent to borrow or to sell, and binds his estate for the acts of the agent or executor done within the scope of the business intrusted to him. He alone knows the amount and validity of the claims against the estate, and, where the money is borrowed or the sale made a short time after the probate of the will and within the statute of limitations of notes, accounts, or specialties, nearly all the authorities agree that it is not incumbent on the lender or purchaser to make inquiry as to the amount or validity of the claims against the estate. If the contract or transaction is free from fraud and collusion, and the purchaser or lender has no notice of the amount of the debts, the estate is bound. Of course, if the lender or purchaser colludes with the executor or has notice of the amount of the debts, and enters into the transaction to defraud the estate or lends more money or purchases more property than is necessary to pay the debts, the estate is not bound.

As early as the first volume of the reports of the decisions

of this court, in the case of *Bond* v. *Zeigler*, 1 *Ga.* 324, we find
a recognition of this principle. . There the executrix, under a
power authorizing the sale of property to pay debts, sold certain
property to Bond & Murdock, who were creditors of the estate.
The amount of their debt was allowed them, and, the property
having sold for more than this amount, the balance was paid
in cash.    The property was afterward levied upon by other
creditors of the estate, who contended, among other things, that
the purchasers were bound to ascertain the amount of the debts
due by the estate.    This court held ( p. 344), that in such cases
purchasers are not "required, before buying, to look into the
accounts of the executor to ascertain that he is faithfully ad-
ministering his trust; the law presumes this, in his favor."    It
is true that the sale was of personal property, and it may be
said that the executor, having title thereto by virtue of his of-
fice, could have sold it even without the power given by the
will; but we find the same principle recognized in cases where
the sale was of real property.    In 2 Perry on Trusts (5th ed.),
§ 809, it is said:    "The purchaser need not inquire into the
necessity of a sale.    Even express notice of the entire contents
of a will can not affect the purchaser of a chattel; for a pur-
chaser of real estate under a power of sale to pay debts is not
bound to investigate whether there are debts, nor to see to the
application of the purchase-money.    And as all personal prop-
erty is bound for the payment of debts, a purchaser is not bound
to know whether there are debts or not, nor to see to the appli-
cation of the purchase-money."    In Larue v. Larue, 3 J. J.
Marsh. 157, the executors " were only authorized to sell so much
land as was necessary to raise funds to pay the debts."    They
transcended these powers and sold more land than was neces-
sary to pay the debts.    The court said:    " The will . . gave
them authority to sell for the purpose of paying debts.    If they
abused or transcended their authority, they are responsible to
the heirs or devisees; but bona fide purchasers from them or
their vendees can not be affected, unless they have notice of the
improper conduct of the executors.    What debts [the execu-
tor] owed, or how much land it was necessary to sell to pay
them, were matters of which the executors should judge, and
upon which they alone were competent to decide.    The testa-

tor reposed confidence in them and gave them authority to act, and thereby strangers were invited to entertain confidence.    It would, therefore, be unjust to permit strangers, who purchased in good faith, to sustain injury from the frauds of the executors."    In Rutherford *v.* Clark, 4 Bush (Ky.), 27, it was said: "When a will directs the sale of real estate, if necessary, for the payment of all the testator's debts or legacies, a purchaser at any such sale, not being presumed to know or to be able, by reasonable diligence, to know the condition of the estate or the extent of its indebtedness, or of its assets, should be protected in his purchase whenever made in good faith, without notice, actual or constructive, of the latent fact that there was no necessity for the sale, and consequent want of authority to make it.    If this were not so, prudent men would not bid a fair price at such sales."

In Garnett *v.* Macon, 6 Call, 308, Chief Justice Marshall said (p. 362):    "The purchaser [of chattels] is not bound to make any inquiry.    The general power of the executor to sell protects him in buying; but if he buys with notice that the sale is a breach of trust, the property remains charged with it.    I feel much difficulty in resisting the application of this principle to freehold estates charged with the payment of debts.    It would seem to me as if the inquiry must always be into the fact.    The question must always be, Is the sale, taking its object into view, a breach of trust?    And are the circumstances such as to charge a purchaser, having express notice, with a participation in the breach?    The purchaser of a chattel from an executor, with notice that no debts are due, or in payment of his own debt, seems to me to present the same questions."    And it was held by Brett, L. J., in re Tanqueray-Willaume, 20 Ch. Div. 465, 482:    "The question whether the purchaser's title [to real estate charged with the payment of debts] would be bad if there were not in fact any debts, supposing the time which has elapsed not to be too long, is determined by Stroughill *v.* Anstey [1 D., M. & G. 635], which is an authority for saying that if there is a charge of debts upon the property, then, if the purchaser has no knowledge that there are no debts, he has, except under peculiar circumstances, a right to assume that there are debts, and that his title is good whether there are or are not debts in

fact.    So far, therefore, from its being prudent in him to ask this question, it is imprudent to ask it unless there has been sufficient lapse of time to call upon him to make that requisition." See also Smith v. Henning, 10 W. Va. 596, 640; 11 Am. & Eng. Enc. L. (2d ed.), 1053 and notes.    These authorities clearly show that this principle applies as well to the sale of land charged with debts as to the sale of personalty.    The cases cited deal with sales by the executor, but there is, in our opinion, no difference as to this matter between a sale under a power to sell to pay debts and a mortgage given to secure a loan under a power to raise money to pay debts.    It is incumbent on the lender to ascertain the power of the executor under the will, and, if the will gives the power to raise money to pay debts, it is not necessary for the lender to inquire into the amount of the debts or into the validity of the claims against the estate. Where the loan is made a long time after the death of the testator, so that there arises a presumption that the debts have all been paid, the estate is not bound beyond the amount of the debts actually owed.    The expiration of a long period of time after the qualification of the executor would be sufficient to put the lender upon inquiry as to whether there are debts.    In the present case, the loan was made within eighteen months after the probate of the will, and no fraud or collusion or notice of the amount of the debts, on the part of the mortgagee, was intimated in the record.    The executor had the power to borrow the money to pay the debts of the estate, and the lender had the right to presume that this power was properly exercised. Not only was the executor the sole judge of the amount of the debts, but he alone knew of the amount of funds of the estate which were available to pay those debts.    In order to determine the necessity for the loan, it was necessary to know, not only the amount of the debts, but also the amount of funds already on hand which were available to pay the debts.    Into these matters we think the lender was under no duty to inquire.    He was protected, having loaned the money in good faith and without notice, although as matter of fact the amount loaned exceeded the amount of the debts of the estate.

4. The power of the executor to raise money necessarily implied authority to secure the loan.    We think it also necessarily

implied the authority to make a contract to pay the lender ten per cent. attorney's fees in case the debt had to be collected by suit.   Contracts to pay attorney's fees have been held good by this court, and are recognized by our Civil Code, § 3667.   They are, however, not enforceable unless the party, when sued, files a plea and fails to sustain it.   This court has held that the insertion of a stipulation for the payment of attorney's fees does not destroy the negotiability of a promissory note.   It seems now to be the general practice in this State for the borrower of money to insert in his note or contract an obligation to pay attorney's fees in case the debt has to be collected by law.   The power given the executor in the present case implied authority to raise the money in any proper and usual way, and the agreement to pay attorney's fees was not improper or unusual.   We therefore hold that the executor, having power under the will to raise the money in such manner as seemed best to him, had authority to contract for the payment of attorney's fees if the note given had to be collected by suit.

*Judgment affirmed.   All the Justices concurring.*