No. 21,411.

JUSTUS B. LINDERHOLM, *Plaintiff*, v. J. W. WALKER, as Probate Judge of McPherson County, *Defendant.*

SYLLABUS BY THE COURT.

1. MANDAMUS — *Approval of Appeal Bond by Probate Judge.* The supreme court cannot require a probate judge to approve an appeal bond which does not satisfy the probate judge as to its sufficiency, when the judge's good faith is not challenged.

2. SAME—*Writ Should Not Issue.* Some other simple reasons showing why writ of mandamus should not issue, discussed.

3. INSANE PERSON—*Cannot Conduct Litigation.* A person who has been adjudged insane, and who is under guardianship, cannot conduct litigation without the supervision, control, and protection of his guardian.

4. SAME. When it clearly appears that a person who has been adjudged insane is the plaintiff in an action, and that he is seeking to maintain that action independently of his guardian and without the approval of the latter, the action should be dismissed.

Original proceeding in mandamus. Opinion filed March 9, 1918. Writ denied, and cause dismissed.

*Justus B. Linderholm*, of Topeka, *pro se.*

*Frank O. Johnson, G. F. Grattan*, and *J. M. Grattan*, all of McPherson, for the defendant.

The opinion of the court was delivered by

DAWSON, J.: This is an application for an alternative writ of mandamus, to require the probate judge of McPherson county to approve an appeal bond in a certain matter which the petitioner seeks to appeal to the district court from the judgment of the probate court, and to certify it to the district court. The particular grievance which the petitioner desires to have reviewed by the district court was the question of the propriety of an order of the probate court discharging Mrs. Agnes Ekblad as executrix of her deceased husband's estate, the latter in his lifetime having been guardian of the estate of the petitioner. The probate judge disapproved the bond and refused to certify the matters to the district court.

Linderholm v. Walker.

In behalf of the probate judge, an answer has been filed in which it is shown that the petitioner was adjudged insane some years ago; that thereafter, in May, 1909, the petitioner's mother was appointed and qualified as his guardian, and that she died in a short time; that John Ekblad was then appointed as guardian for the petitioner, and he qualified and acted as such until his death in 1914; and that Frank O. Johnson was afterwards appointed and qualified as guardian of the petitioner, and still is the legal guardian of the petitioner, and is in possession of the petitioner's property. The answer continues:

"That the said Frank O. Johnson had duly settled and collected from the executrix of his predecessor, with the approval of this court, all the funds that came into her hands as such executrix or that had been collected by said John Ekblad, deceased, and belonged to said plaintiff's estate. That at no time did the said plaintiff file any claim against the said estate of John Ekblad, claiming that said estate was indebted to said plaintiff or to his guardian.

.    .    .    .    .    .    .    .    .    .

"That the said alleged appeal bond is insufficient, and in the judgment of the said probate court the sureties are not responsible, and it is not in the judgment of said probate court a good and sufficient appeal bond."

To this answer the plaintiff has filed a demurrer, which has the same effect as a motion to quash or a motion for judgment on the pleadings. In other words, for the purpose of testing the sufficiency of the answer, the demurrer admits the truth of the matters pleaded therein.

On the mere statement of the case which we have outlined above, so many sound judicial reasons why the writ should not issue come to mind that we shall limit ourselves to indicating only a few of them, and choose from among those which are simplest, and which may be most readily understood.

A writ of mandamus never issues from a higher court to a lower court to control the discretion of the latter. Here the probate judge exercised his discretion—his best judgment—in holding that the appeal bond was not a good one. There is no allegation in the petition that the probate judge abused his discretion, no showing that he acted arbitrarily or in bad faith. The plaintiff's demurrer admits the facts which are alleged in the probate judge's answer. The demurrer, in effect, says: "Suppose the bond is not a good and sufficient

bond, I want the supreme court to compel Probate Judge Walker to approve it nevertheless." This court could not do that. We could not compel the judge to approve a bond which in his judgment is not a good one, when the petition does not impeach the judge's good faith.

Another matter: The petition does not show that the cause sought to be appealed to the district court was disposed of in the probate court in such a way as to injure any right of the plaintiff. The petition does not show that Mrs. Ekblad was wrongfully given her final discharge as executrix by the probate court. The petition discloses no reason why Mrs. Ekblad should have been denied her discharge. It is not even shown in the petition that the plaintiff had filed any claim in the probate court against the executrix. Why then should she be kept in court and dragged from court to court and harassed with litigation? The state does not maintain courts on the same theory that public parks and playgrounds are maintained— for the mere entertainment and recreation of those who choose to use them. Courts are instituted to deal with the serious controversial matters of men, for the vindication of substantial rights and the redress of substantial wrongs which men cannot settle amicably without the help and authority of the state.

Still another suggestion: The probate judge's answer alleges that the plaintiff was adjudged insane some years ago, and that he is yet under guardianship. A person under such disability cannot conduct litigation in his own behalf. Among the many reasons why he cannot and should not do so is one which is paramount—the temporary incapacity of such person to protect his rights. If an insane person could maintain a lawsuit, he might and probably would lose that lawsuit, because his temporary disability would too severely handicap him in a contest with a wide-awake, enterprising, and perhaps none too scrupulous opponent. Another important reason why a person adjudged insane should not be permitted to indulge in litigious controversies is that they cause worry, anxiety, and mental unrest, while the paramount good of the invalid requires that he be freed from worries, cares, and vexations, in the hope that he may speedily be restored to his mental health and intellectual vigor. Furthermore, parties

who might be involved in litigation with an insane person have also some rights entitled to protection. If they are dragged into litigation they are entitled to get through with that litigation and be done with it; but a lawsuit with an insane person could not conclude anything. When the insane person was afterwards mentally restored, his legal adversaries would always face the possibility of having to go through the turmoil of the same litigation again, since a judgment against an insane person would not ordinarily bar any right of action existing or accruing to him during his mental infirmity. The law on this subject is neither thoughtless nor unjust. It has provided adequate legal machinery for protecting the rights of insane persons. If those rights are jeopardized, it is the duty of his legal guardian to attend to them, and the petition discloses nothing from which it could be assumed that the guardian has neglected his duty touching Mrs. Ekblad's claim of right to her final discharge as executrix. It also appears from the pleadings that the plaintiff's guardian does not approve of the litigation which the plaintiff seeks to maintain, and the petition does not impeach the guardian's good faith.

The court indulges the hope that it has made this subject sufficiently plain for the petitioner's comprehension. The writ must be denied, and this case is dismissed.