No. 22,178.

LINN COUNTY BANK, *Appellee and Appellant*, V. ELIZABETH
GRISHAM et al., *Appellants and Appellees*.

### SYLLABUS BY THE COURT.

1. MORTGAGE FORECLOSURE—*Proper Parties Defendant.* In a foreclosure suit, where the mortgagor has contracted to sell the mortgaged property to a third party, and both of them are made defendants, they may be permitted to join issues and have their respective rights adjudicated in such suit, although the plaintiff mortgagee and superior lien holder is not concerned therewith; and the plaintiff's motion to strike from their pleadings the allegations which raise issues with which he is not concerned may properly be overruled.

2. SAME. When issues have been joined between defendant parties to a foreclosure suit, a motion of the plaintiff to dismiss the action altogether may properly be overruled.

3. SAME—*Proper Judgment for Mortgagee.* When the plaintiff in a foreclosure suit is given judgment for the full amount due him and the interest thereon, a provision in the judgment that interest shall cease when such full amount and interest is paid into court for his benefit is not error.

4. SAME—*Findings of Fact—Conflicting Evidence.* Rule followed that when there is sufficient evidence to support a trial court's finding of fact, it is of no importance on appeal that there was considerable testimony given at the trial which, if believed, would have led to a contrary finding of fact.

5. CONTRACT—*Specific Performance—Conditions When Contract Was Made to be Considered.* Where specific performance of a contract is resisted, and the aid of a court of equity is invoked, the question whether the contract was just or unjust, fair or unconscionable, has to be considered as of the time the contract was made, and ordinarily is not affected by conditions or events which transpire subsequently.

6. SAME — *Exchange of Property — Building Burned — Loss Falls on Vendee.* When a lawful and binding contract for the exchange of properties consisting of real estate has been executed, the fact that a building on one of the properties is thereafter burned does not furnish an excuse to rescind the contract, nor render it impossible to grant specific performance. The loss in such case falls on the vendee.

7. MORTGAGE FORECLOSURE — *Necessary Additional Parties — Properly Brought in.* In a foreclosure suit, where parties defendant are lawfully litigating their rights, which are subordinate to those of the plaintiff mortgagee, and the proper determination of those subordinate rights necessitates the presence of additional parties, the

trial court or judge should order such other parties to be brought in, and the rights or pretensions of such additional parties in the property in question may properly be adjudicated in the same action.

8. WILL—*Executrix's Power to Sell Real Estate.* A testator may lawfully clothe his executrix with power to sell real estate without the necessity of receiving the sanction of the probate court as a prerequisite to such sale.

9. SAME—*Rights of Purchasers from Executrix.* Purchasers of property from an executrix are not bound to inquire into her powers beyond ascertaining that a duly probated will empowers her to sell; they may deal with her in full confidence. If she transcends her authority, or fails properly to account for the proceeds, she is responsible to heirs, devisees, or creditors, but the vendees without notice of her improper conduct are not affected.

10. MORTGAGES—*Debt Due in Default of Payments at Holder's Option.* Where a debt is secured by a mortgage on realty, and the note evidencing the debt merely provides that default in the payment of principal, interest or taxes shall, at the holder's option, mature the whole debt, the debt is not absolutely due at the first default of interest. The mortgagee may refrain from exercising his option, and payments of interest on the mortgage debt may later be lawfully made by the executrix of the debtor and may lawfully be accepted by the mortgagee, and the rule that an executrix cannot waive the statute of limitations does not govern such a situation.

11. NOTE—*Secured by Mortgage—Exhibit as Demand Against Estate.* The holder of a secured debt need not exhibit it as a demand against the estate of his debtor, if he is content to look only to his security for payment, and not to the general assets of the estate.

12. MORTGAGE—*Proper Party to Enter Satisfaction of Record.* Ordinarily, the proper party to enter and record satisfaction of a mortgage debt is the mortgagee or the last assignee thereof whose assignment is of record. A discharge by such last record holder protects the debtor and those claiming under him.

13. TRIAL—*Change of Venue—Prejudice of Judge.* Rule followed that an application for a change of venue on account of the prejudice of the judge towards a litigant is addressed to the conscience of the judge, and his determination thereof is ordinarily conclusive.

14. SAME—*No Prejudicial Errors.* Other assigned errors examined, and held to be without merit.

Appeal from Linn district court; EDWARD C. GATES, judge. Opinion filed November 8, 1919. Affirmed.

*Jacob I. Sheppard,* and *James G. Sheppard,* both of Fort Scott, for the appellant and appellee, Elizabeth Grisham.

*William P. Dillard,* of Fort Scott, and *Charles F. Trinkle,* of La Cygne, for appellees A. W. Rush and E. F. Rush.

*F. M. Sheridan,* and *B. L. Sheridan,* both of Paola, for appellee O. G. Norton.

*John C. Cannon,* of Fort Scott, *John A. Hall,* of Pleasanton, *Stephen H. Allen, Otis S. Allen,* and *George S. Allen,* all of Topeka, for appellees and appellants, The Linn County Bank, The New England National Bank, The Knights of Pythias Lodge, F. M. Pollman, Robert H. Ireland, Alfred J. Black, and A. J. Wuttke, Administrator.

The opinion of the court was delivered by

DAWSON, J.: The Linn County Bank brought this suit against Elizabeth Grisham and others to foreclose a mortgage on a farm of 522 acres in Linn county. In this suit certain defendants were made parties, and they were permitted to litigate certain of their interests which were more or less affected by the foreclosure suit.

The plaintiff bank had a mortgage on Mrs. Grisham's farm. The mortgage was in default. On October 3, 1917, the plaintiff commenced foreclosure. Prior thereto, on September 8, 1917, A. W. Rush had made a bargain for the Grisham farm and had received a conveyance of it, and he was made a defendant. O. G. Norton, the farm tenant, was made a party.

Mrs. Grisham's answer and cross petition asserted her ownership of the farm, acknowledged her indebtedness under the plaintiff's mortgage, denied that the other defendants had any interest in the farm, and alleged that E. F. Rush, who was a brother of A. W. Rush, claimed to have a deed to her farm given by her and her husband, but that any such deed was obtained by the fraud of A. W. Rush and E. F. Rush; and that A. F. Rush claimed some interest in the farm under a contract procured from her by false representations, and a copy of this contract was set out in her answer:

"AGREEMENT AS TO EXCHANGE OF PROPERTY.

"Witnesseth: That A. W. Rush, hereinafter known as the party of the first part, and Elizabeth Grisham, hereinafter known as the second party, wherein Elizabeth Grisham agrees to sell to said first party her

land consisting of five hundred and twenty-two acres (522) for fifteen thousand dollars ($15,000.00) in cash and for property in La Cygne, Kansas, known as the Miller Building, and the dwelling in La Cygne covering . . . tract . . . [described] . . . These properties are all to be transferred clear of incumbrance and said first party is to have rent free in the home for one year, and said party of the second part is to pay all taxes for year 1917. In case of failure to fill the contract by either party a forfeit of one thousand dollars ($1,000.00) is hereby agreed to be paid.

"Dated September 8th, 1917.              "ELIZABETH GRISHAM,
                                         "A. W. RUSH."

The alleged false representations, in substance, were that A. W. Rush was to pay her $15,000, exclusive of deductions for the mortgage indebtedness; that Rush stated to her that the residence on the La Cygne property which he contracted to convey to her cost $7,000 or $8,000; and that she could sell the property for $10,000. She alleged that there was a shortage in the represented acreage attached to the Rush residence; that Rush wrote the contract and did not truthfully set down the agreed terms; that she was an ignorant person and relied on the statements made by Rush and upon his accuracy in writing the terms of the contract; and that if Rush really understood that the mortgages were to be paid out of the $15,000, the minds of the parties had never met. Mrs. Grisham further set up claims for the value of hay, corn, rent notes, pasture notes received by Rush, and for the value of grass pastured on her farm by Rush's cattle. She also alleged that the Miller building mentioned in the contract was destroyed by fire, and therefore that the contract could not be specifically enforced; that the Miller building was involved in the estate of one George J. Miller, deceased, and was liable to be taken for Miller's debts; and that a suit had been brought by creditors of Miller involving the title to the properties which Rush was to convey to her. She prayed that the deed to Rush be set aside, that her contract of September 8, 1917, with Rush be set aside, and if specific performance were decreed against her, that it be enforced upon the basis of $15,000 to her over and above the mortgages on the farm.

The plaintiff moved to strike from Mrs. Grisham's answer and cross petition all matters except those responsive to its petition for foreclosure. This motion was overruled.

A. W. Rush answered, denying the allegations of Mrs. Grisham's cross petition, admitting the execution of the contract between him and Mrs. Grisham, and alleging that she and her husband had executed and delivered to him a warranty deed to the land, and had delivered to him possession of the farm; that at his request his brother, E. F. Rush, was named as grantee of the farm; that he paid $1,500 to Mrs. Grisham's husband at her request and pursuant to a separation agreement between Mr. and Mrs. Grisham at the time the deed to the farm was executed by them; that part of the agreement between Mrs. Grisham and Rush provided that he should receive certain hay, corn, pasture accounts, and the current rent notes of the farm tenant; that possession of all these items except the Norton rent notes was delivered and assigned to him by Mrs. Grisham at the time the contract was executed, and because of such delivery no reference was made to them in the written agreement; and that Mrs. Grisham had wrongfully collected the Norton rent notes, and had wrongfully reëntered the farm, and had taken possession of some of the corn and hay. Rush also denied that the titles to the residence and Miller building which he had contracted to convey to Mrs. Grisham were defective, and alleged that the titles were good and merchantable; that the suit which assailed those titles and sought to subject those properties to the debts of the Miller estate was a false, fraudulent and unjust suit, which one Pollman, the cashier and managing officer of the plaintiff bank, had instituted for the purpose of clouding the title to the Rush residence and Miller building, so as to furnish Mrs. Grisham with grounds of rescission, in order that he, Pollman, might purchase the farm at foreclosure sale; that defendant Rush was ready to pay over to Mrs. Grisham the balance of the $15,000 due her after the mortgages were paid; and that the rights of the parties were fixed before the Miller building burned. Rush prayed that his title be quieted, that he be given credit against Mrs. Grisham for $1,500 paid by him to her husband, and that the amount of the plaintiff's lien be ascertained.

Certain parties who were creditors of the Miller estate were brought in by order of the court or judge, on a motion of Rush, requiring them to set up their interests in the properties which Rush had contracted to convey to Mrs. Grisham.

Following the impleading of all these defendants and the joining of issues between Rush and Mrs. Grisham, the plaintiff, on February 4, 1918, filed a motion to dismiss the action without prejudice.  This motion was denied.  Certain of the creditors sought to be dismissed.  Their motion was denied.  A motion of the New England National Bank, a creditor, to quash the service of summons upon it was denied.  Pollman, president of the plaintiff bank, who had been personally made a defendant as a creditor of the Miller estate, filed a motion for a change of venue because of an alleged long-standing personal animosity between himself and the trial judge, which had existed when the judge was a member of the bar and before his elevation to the bench, and Pollman avowed his belief that because of such hostility the judge was prejudiced and disqualified.  That motion was denied.

The will of George J. Miller was exhibited in the pleadings of the creditors of the Miller estate.  They alleged that the executrix had given no bond, and had published no notice of her appointment.  They set up the several sums due them from the Miller estate, and alleged that Rush had induced the executrix to convey to him without lawful consideration certain of the Miller properties (which were among those which Rush had contracted to convey to Mrs. Grisham), and that the Miller estate was insolvent; that the executrix had no authority to convey such property to Rush; that the probate judge had no jurisdiction to direct its sale to Rush; that part of the consideration for the sale by the executrix to Rush was a debt barred by the statute of limitations; and that the sale was improvident and in violation of the rights of the Miller creditors.

The plaintiff was given judgment for the full amount of its mortgages, and foreclosure was decreed.  The contract between Rush and Mrs. Grisham was enforced, and the title to the Rush properties was quieted against the Miller creditors.  Rush was ordered to pay into court within ten days the full amount of plaintiff's judgment; otherwise an order of sale to satisfy plaintiff's judgment would issue.

The plaintiff, Mrs. Grisham, and the creditors appeal.

The plaintiff bank complains of the overruling of its motion to strike from Mrs. Grisham's answer and cross petition the

matters in controversy between her and Rush; it complains of the overruling of its motion to dismiss the action; and it complains of that part of the judgment which provided that upon Rush's payment into court of the full amount due the bank the interest thereon should cease.

Mrs. Grisham contends that the title of the Rush residence property was not sufficient to support a decree of specific performance; that she and Rush never made the contract; that the enforcement of the contract is unconscionable; and that the destruction of the Miller building by fire renders specific performance impossible.

The creditors of the Miller estate contend that the court erred in making them parties to the action; that the mortgage which was satisfied as part consideration for the tract acquired by Rush from the Miller estate and upon which he erected the residence which he contracted to convey to Mrs. Grisham was barred by the statute of limitations; and that Miller's will did not authorize his executrix to convey the property to Rush.

Among the other errors assigned are the denial of a change of venue, the failure of Rush to plead readiness to perform his part of the contract, and that the decree is inequitable.

This assignment is more extensive than formidable. The plaintiff bank brought the action to foreclose its mortgages. It made Mrs. Grisham and A. W. Rush defendants and asked that they be required to set up their respective claims. These defendants complied, and since a cross petition and cross answer were necessary to determine the issues between them, the bank's motion to strike out Mrs. Grisham's cross petition was properly overruled.

In a recent case this court said:

"When it is necessary for the holder of a superior mortgage lien to foreclose that lien, he may properly sue everybody concerned, including those who have inferior interests which conflict with each other, whether they conflict with his interest or not, and the latter may be permitted to join issues with each other, although the superior lien holder is not concerned therein, and the court may settle the priority and precedence of the claims of all the parties and dispose of all phases of the controversy in one decree." (*Ruf v. Grimes*, 104 Kan. 335, Syl. ¶ 5, 179 Pac. 378.)

It is argued for the bank that if its motion to strike had been sustained, "the plaintiff might have proceeded to foreclose its

mortgages without becoming involved" in the controversies of the rival defendants.  There are two obvious answers to this: the code permits it (Civ. Code, § 40; *Gerson v. Hanson,* 34 Kan. 590, 9 Pac. 230); and the plaintiff was neither involved nor hindered because of the subordinate controversy between Rush and Mrs. Grisham.  Plaintiff commenced its action on October 3, 1917, and it was put to no expense to prove its cause, and final judgment in favor of plaintiff for the full amount of its mortgages was entered on June 14, 1918.  Moreover, on this, as well as on other matters pressed on our attention in this lawsuit, the litigants and their counsel need to be reminded that it serves no purpose to complain in this court of the doings of trial courts which have wrought them no harm. The code forbids the supreme court to disturb judgments for irregularities which do not affect substantial rights.  (Civ. Code, § 581.)   In *Culbertson v. Sheridan,* 93 Kan. 268, 144 Pac. 268, Mr. Justice Burch, speaking for the court, said:

"It is not important, therefore, whether or not the procedure by which this result was obtained was free from flaw.  As this court has many times declared, rules of procedure are not ends in themselves. They are merely means by which correct results can be obtained, and no appeal is meritorious which seeks to overturn a manifestly correct result merely because of procedural nonconformity."  (p. 272.)

Nor was there error in overruling plaintiff's motion to dismiss the action on February 4, 1919.  Ere then the action had, with propriety, extended to controverted issues which the defendant parties had a right to have adjudicated; some of them had been summoned into court by plaintiff for the purpose of having their rights determined.  In *Holmes v. Holt,* 90 Kan. 774, 136 Pac. 246, it was said:

"By the petition, however, it appeared that Holt had rights accruing to him in the transactions which in equity should be determined in the same action in which his deeds were declared to be mortgages.  When a court of equity acquires jurisdiction of an action brought to determine whether certain conveyances are in fact mortgages, although purporting to be deeds, it will retain jurisdiction for the purpose of adjudicating all differences between the parties growing out of the transaction."  (p. 776.)

(See, also, *Ruf v. Grimes,* supra; *Hazen v. Webb,* 65 Kan. 38, 68 Pac. 1096.)

Moreover, the plaintiff's motion was not merely to dismiss that phase of the lawsuit in which it was interested, but to

dismiss the action altogether, and that motion was properly overruled.

Nothing further concerning the rights of the plaintiff bank can be discerned in this case which requires discussion. The bank does not complain of the inadequacy of the judgment. It merely protests because the decree provides that the interest on its judgment shall cease when the amount due it is paid into court for its benefit. It does not suggest a more appropriate time. The bank says that feature of the judgment prejudices "its right of appeal." In *Linderholm v. Walker,* 102 Kan. 684, 686, 171 Pac. 603, it was remarked:

"The state does not maintain courts on the same theory that public parks and playgrounds are maintained—for the mere entertainment and recreation of those who choose to use them. Courts are instituted to deal with the serious controversial matters of men, for the vindication of substantial rights and the redress of substantial wrongs which men cannot settle amicably without the help and authority of the state." (p. 686.)

Passing to the grievances of the appellant, Mrs. Grisham: Her contention touching the defect in the title to the Rush residence property will be considered later with those of the Miller creditors. It is contended that the minds of Mrs. Grisham and A. W. Rush never met—that they never made the contract for the exchange of properties. There was no lack of apparently creditable testimony that the contract was made as asserted by Rush. It is useless to summarize that evidence, and, moreover, in view of the evidence of values of the properties exchanged, it is little less than preposterous for Mrs. Grisham to say that Rush was to give her $15,000 in excess of the mortgages. The credence to be given to the testimony is the prerogative of the trial court (*Wideman v. Faivre,* 100 Kan. 102, 106, 163 Pac. 619), and its determination of that controverted fact is conclusive.

There is nothing unconscionable about the court's decree which grants specific performance of the contract. Before Mrs. Grisham lent herself to her litigiously disposed associates, —and it is clearly deducible from this record that she did—she had come out of her financial difficulties in very good shape. She had "cleaned up on Rush" as she jubilantly told some of her acquaintances. In lieu of a farm loaded down with first, second, and third mortgages, and on the threshold of foreclosure by an insistent creditor, she had contracted for and

had procured a costly unincumbered modern home with several acres attached, and a business building, and was to receive some $3,000 or $4,000 in cash when the exact amount due plaintiff should be ascertained. In an action for specific performance, the fairness or hardship of a contract must be considered as of the time it was made, not by conditions or events which subsequently transpire.

Touching the destruction of the Miller building by fire, that transpired after the contract was executed, and after she had begun to exercise the right of ownership of the building. She had begun to collect the rent. When a lawful and binding contract for the exchange of properties consisting of real estate has been executed, the fact that a building on one of the properties is thereafter burned does not furnish an excuse to rescind the contract, nor render it impossible to grant specific performance. The loss in such case falls on the vendee. If the other features of this case warrant the conclusion that Mrs. Grisham was not privileged to rescind her contract with Rush, the Miller building was her property when it was burned. (*Lombard v. Chicago Sinai Congregation*, 64 Ill. 477, 482; *Brewer v. Herbert*, 30 Md. 301; *Dunn v. Yakish et al.*, 10 Okla. 388; 3 Elliott on Contracts, § 1907, note; 1 Sugden on Vendors, 8th Am. ed., 446.)

Turning next to the errors urged by the creditors of the Miller estate, it seems clear that they were properly made parties to the action. The question whether the contract between Rush and Mrs. Grisham should be enforced could not conclusively be determined unless they were brought in and their rights or pretensions affecting the Rush titles adjudicated. (Civ. Code, §§ 35, 40.)

The Miller creditors and Mrs. Grisham contend that the executrix of the Miller estate had no power to sell to Rush the tract of ground upon which he erected the residence which was included in the Rush-Grisham contract. The Miller will provided:

"3rd. It is my will and I direct that at my death my wife, M. D. Miller shall at once take full control of my property and shall manage the same as my executrix, she to have full power to manage and care for the same. She is to rent, lease, repair, insure and pay taxes on the same, and do all things necessary for the benefit of the same. I hereby empower her to sell the personal property and use the proceeds

as she thinks best. I empower her to mortgage the real estate as she thinks best and also authorize her to sell any part of the real estate and to make deeds for the same without the intervention of any court, she to use the proceeds of any mortgage or of lands sold for the improvement of other property or for the support or education of the children of our family or the support of herself.

.    .    .    .    .    .    .    .    .    .    .    .    .

"5th. I hereby appoint my wife, M. D. Miller, my executrix, and I request that she be permitted to execute the duties of said office without bond."

It is difficult to see how more simple and explicit language could have been employed to express the testator's purpose to clothe the executrix with the power which these appellants dispute; and there can be no question that such power can be granted by a testator. The powers of an executor are those which are conferred upon him by the will and do not necessarily depend upon the action of the probate court. The probate court determines the authenticity of the will, but the executor derives his power, not from the court, but from the testator. (Note, 78 Am. St. Rep. 171; 11 R. C. L. 128.) We are not at present discussing the necessity of probating the will, nor the necessity of formal appointment, qualification and notice in conformity with the statute. All that was done by the Miller executrix. We merely hold that the testator, George J. Miller, lawfully conferred upon his executrix the power to sell real estate without formal sanction of the probate court (Gen. Stat. 1915, § 4621), although she did, in fact, consult that court and keep it informed of her doings, and that court approved her reports as made from time to time during the years of her executorship.

In 18 Cyc. 318-322, it is said:

"A testator may of course by his will give to his executor power to sell his realty, and when such power is given the executor may proceed to sell the realty without recourse to the courts for a license, although it has been said that an executor derives his power to act as such in the transfer of immovable property from a compliance with the law of the place where he attempts to operate under the will and not from the will alone, and the executor must take out letters testamentary in order to lawfully exercise the power which the testator has thus conferred upon him.

"It is not necessary that the power to sell should be expressly given in terms by the will, but it may be implied when it is clear that the testator intended that his executor should have such power or the direc-

Bank v. Grisham.

tions of the will are such that a power of sale is necessary in order that they may be properly carried out. . . .

"Where executors are given a general power of sale they may sell at their discretion, as prudence may dictate, during the continuance of the trust, and are not limited to a sale for purposes of administration. . . . The power contained in the will should, however, be given a liberal construction in order to carry into effect the true purpose of the testator."

(See, also, *Niquette v. Green,* 81 Kan. 569, 583, 106 Pac. 270; Note, 78 Am. St. Rep. 171; 18 Cyc. 297-299; 11 R. C. L. 128.)

This power of the executor should never be captiously drawn in question. That would handicap the efficient discharge of his trust. Prospective buyers would fear to deal with him, and consequently the estate in his hands would suffer. And so the general rule is that purchasers are not bound to inquire into his powers; they may deal with him in full confidence. (Gen. Stat. 1915, § 11,682.) If the executor transcends his powers, he is responsible to heirs, devisees and creditors, but the vendees cannot be affected unless they have notice of the executor's improper conduct. (*Fletcher v. American Trust & Bkg. Co.,* 111 Ga. 300, 78 Am. St. Rep. 164; 2 Perry on Trusts, 5th ed., 490.) But the conveyance from the executrix to Rush is assailed by what is in effect an attack on the good faith of the transaction—that part of the consideration was the cancellation of a mortgage which was barred by the statute of limitations. In 1909, Miller and wife borrowed $1,000 from Rush's bank, and gave a mortgage on the plot of ground as security. The note was dated November 20, 1909, and was due in two years, with interest at 7 per cent after date, payable semiannually. Miller died in 1910. His will was probated on September 10, 1910, and on September 19, 1910, his widow entered upon her duties as executrix. The notice of her appointment and qualification was published. The fact that the proof of this was missing from the files of the probate court is immaterial, since nobody has disputed her appointment and qualification. (*Collamore v. Wilder,* 19 Kan. 67.) The will expressed the wish of the testator that no bond should be required of her, and that wish was respected by the probate court, and has been acquiesced in by the creditors for nearly a decade. Annually, or oftener, she made report of her doings as executrix to the probate court. She made pay-

ments of interest on this note in January, 1911, December, 1911, May, 1913, and December, 1913. These payments were reported to the probate court, and approved. The amount of principal and interest due on the note on October 14, 1916, when she conveyed the mortgaged tract to Rush, was $1,224.70. Rush, on that date, bought the property for $2,000, accepting it in satisfaction of the mortgage, and paying her the balance in cash. This balance has been distributed to creditors of the estate. The point raised by appellants is that in the mortgage was a provision that if default was made in the payment of principal, interest, or taxes, the debt should become due at once. But the note must be likewise considered. It contained this provision:

"The makers, sureties, endorsers, and guarantors, hereof, severally waive demand of payment, protest, and notice of nonpayment of this note and consent that it may be extended from time to time without releasing either or any of them or any way affecting their liability thereon."

It is argued that the debt secured by this mortgage became due absolutely on the first default of interest in May, 1910, and that the executrix had no power to make payments of interest thereon which would interrupt the running of the statute of limitations, and consequently that the mortgage debt was barred when she made the sale of the mortgaged tract to Rush. The case of *Spesard v. Spesard,* 75 Kan. 87, 88 Pac. 576, is cited to support this contention. The most casual scrutiny of the note and mortgage in that case would show that the doctrine in the Spesard case has no relevancy to the present case. In that case, by the terms of the instruments, default absolutely matured the debt. In this case, default only matured it at the holder's option, and it was expressly provided that extension of time should not release the makers nor affect their liability. Where a debt is secured by a mortgage on realty, and the note evidencing the debt merely provides that default in the payment of principal, interest or taxes shall, at the holder's option, mature the whole debt, the debt is not absolutely due at the first default of interest. The mortgagee may refrain from exercising his option, and payments of interest on the mortgage debt may later be lawfully made by the executrix of the debtor and may lawfully be accepted by the

mortgagee, and the rule that an executrix cannot waive the statute of limitations does not govern such a situation. The mortgage was not barred. (*Bank v. Bangs*, 91 Kan. 54, 136 Pac. 915. See, also, Note, L. R. A. 1915 B., 1016, 1017.)

It is also urged that the debt was not exhibited as a demand against the estate. That formality is not required of a mortgagee, if he is content to look to his security alone for payment, and not to the general assets. (*Andrews v. Morse*, 51 Kan. 30, 32 Pac. 640; *Linn v. Ziegler*, 68 Kan. 528, 75 Pac. 489; *Smith v. Kibbe*, 104 Kan. 159, 165, 178 Pac. 427. See, also, *Robertson v. Tarry*, 83 Kan. 716, 112 Pac. 603.)

The executrix had power to make the payments of interest on the debt, and the probate court approved her annual reports which disclosed these payments; she had power to sell the property to Rush, and the sale itself was a provident one, which, in addition to satisfying a valid mortgage debt, brought a substantial sum, about $750, into the general assets of the estate for the benefit of the appellant creditors.

There is yet another point raised touching this mortgage transaction. The payee and mortgagee was Rush's bank, the La Cygne State Bank, and the note and mortgage had been assigned to Rush's father, but not recorded by him. The father gave the instruments to Rush, and Rush caused the record to be satisfied by the bank. So far as concerned third parties this was proper. The record of the mortgage was satisfied by the only party which could properly do so as the statute provides. (Gen. Stat. 1915, § 6485.)

The remaining points raised by defendants need little discussion. The denial of a change of venue was not error. An application for a change of venue on account of the prejudice of the judge towards a litigant is addressed to the conscience of the judge, and his determination thereof is ordinarily conclusive. (*The State v. Tawney*, 81 Kan. 162, 164, 105 Pac. 218; *The State v. Sexton*, 91 Kan. 171, 136 Pac. 901; *Hanson v. Kendt*, 94 Kan. 310, 313, 146 Pac. 1190; *Miller v. Kerr*, 94 Kan. 545, 547, 146 Pac. 1159.) The failure of Rush to plead his willingness to perform his part of the contract was not challenged by demurrer, and it was waived by joinder of issues. Whether the order to bring in the creditors was made by the court or by the judge was immaterial. (Civ. Code,

§ 40, Gen. Stat. 1915, § 6930.)   The failure of the trial court to render judgment against the husband of Mrs. Grisham was so trifling that the appellants did not even take the trouble to serve him with notice of their appeal.   He is not in this court.

Some of the appellants desire this court to undertake an independent examination of the abstract of title to the Rush residence property, and to consider objections to that title which were not raised below.   This we cannot do.   (*Wideman v. Faivre*, 100 Kan. 102, 107, 108, 163 Pac. 619; *Kelly v. Insurance Co.*, 101 Kan. 636, 168 Pac. 686.)

The fact that the Miller estate is insolvent did not affect the validity of the transfer of property to Rush by the executrix. The estate would have been worse off than it is if the executrix had not succeeded in making such an advantageous sale of it.

The judgment of the trial court was equitable and contains no substantial error.   It is therefore affirmed.