(No. 20211.—

DAISY L. SIMMONS, Appellee, *vs.* LAURA P. BERRYMAN, Appellant.

*Opinion filed December 18, 1930—Rehearing denied Feb. 4, 1931.*

DAVID J. MADDOX, for appellant.

GANN, SECORD & STEAD, (LOY N. MCINTOSH, and JOHN H. BOORD, of counsel,) for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

This is an appeal by the defendant from a decree of the superior court of Cook county setting aside a contract of sale by the complainant, Daisy L. Simmons, to Laura P.

Berryman, the defendant, and dismissing the cross-bill of the defendant for a specific performance for want of equity.

The real estate which was the subject matter of the contract was situated at 5915 and 5917 Calumet avenue and had on it a three-story brick apartment building having six apartments. The legal title was in the Chicago Title and Trust Company as trustee and the entire beneficial interest was in the appellee, who, having furnished the apartments, was letting them to white people. She was white and the appellant colored. The title was subject to a mortgage of $15,000. On March 19, 1928, the appellee agreed to sell and the appellant to buy the real estate for $30,000, $5000 cash and the remainder at $125 a month until $10,000 should be paid, when the purchaser should be entitled to a deed and should give a second mortgage for the remainder, payable $125 a month. The contract referred to another contract executed simultaneously, in the form of a lease of the premises by the appellant to the appellee for a term beginning April 1, 1928, and ending March 31, 1930. This lease provided that the lessee should pay as rent the net proceeds received by her from the operation of the premises for a rooming house or for other purposes, and agreed that the net proceeds should not be less than $300 in any month, and a failure of the lessee to earn and pay $300 in each month should work a forfeiture and the lessor might take possession of the premises. The lessee further agreed to pay all expenses of running the premises, including interest on a $15,000 mortgage, repairs and taxes, and at the expiration of the lease to re-decorate the premises at her own expense in a manner satisfactory to the lessor. It was further agreed that the net proceeds should be credited each month on the purchase price of the premises. A third contract for pro-rating the taxes of 1928, the insurance premium and the mortgage interest was executed at the same time. The contracts were all executed in duplicate, but one of the copies of the third contract had

written upon it below the signatures the following words, which were not on the other copy: "It is further agreed that Mrs. Berryman is to receive $50 per month from the rents for her personal use." The contracts were executéd in the office of George R. Jenkins, an attorney, who testified that Charles T. Broch, one of his clients, came to his office with these two women and told him they had agreed upon a contract, which they wanted him to look over to see if it was all right. The contract and lease were produced by Mrs. Simmons. Jenkins read them and explained them carefully as he understood them. He suggested that there was no provision for Mrs. Berryman's living expenses, and after some discussion they agreed to such a provision. Jenkins wrote it on the third contract, as has been mentioned. Upon the execution of these documents Mrs. Simmons received $5000. After the execution of these instruments the appellee remained in possession of the premises, collecting rents and paying expenses for several months, going to the office of Broch, appellant's agent, and endorsing upon the contract credits upon the principal and interest of the amount of the net receipts, which in no month after April amounted to so much as the $300 specified in the lease. This continued until the first of September, when the appellant moved into one of the apartments and during the remainder of 1928 collected the rents and paid them to the appellee, deducting the expenses of operation. The premises were situated in a neighborhood which was becoming occupied by negroes. When the sale was made to the appellant the appellee was renting the apartments to white people, without any fixed periods. Soon after the sale the white people began to leave the building and the revenue diminished. After September 1 apartments were rented only to negroes, and as an apartment was rented the appellee moved her furniture from the apartment and stored it in the basement. After the end of 1928 the appellant deposited the receipts to her own credit and paid.

the expenses, and when this suit was brought on June 1, 1929, the net receipts which she had amounted to $1203.43, out of which she paid $525 interest upon the $15,000 mortgage in compliance with an order of the court. A receiver was appointed, who has had charge of the receipts and disbursements since the commencement of the suit.

The contract of sale provided that time should be of its essence, and in May, 1929, the appellee served written notice upon the appellant that on and after May 31 she would require strict compliance with the terms of the contract. The appellant and the appellee both testified, and their testimony as to the circumstances under which the appellant moved into the building and began to collect the rents is in conflict. The appellant testified that the appellee asked her to come into the building as the appellee's housekeeper and rent the apartments, taking the front room as an office. The appellant unwillingly consented to try to do what the appellee asked and eventually went to the building, but told the appellee that she did not care what the appellee did—the appellant had nothing to do with it and was going to hold the appellee to the lease; that the appellee told her when she collected the rents to call the appellee right up and she would go over and get the rents and when the tenants paid she would call the appellee up, and never kept any of the rents from September to January. The appellee kept up the expenses of the building. The appellant quit paying the appellee the rents when the appellee told her that the appellant could not carry the building and owed the appellee. After that she put all the money in the South Side Trust and Savings Bank. The appellee testified that she operated the building until midsummer, when she had a talk with the appellant about the tenants moving out, and told her she would have to take the property over because business was dropping off sooner than they thought it would and it was running under $300 net proceeds. The appellant said she would have to do it, and moved in and

took possession of the building the last week in August. The appellee told her that she would not insist upon the terms of the contract and the appellant would not have to pay $125 a month and interest, because the building would not pay it. The appellee was going to be very lenient with the appellant and would not regard the contract as binding and would work with her in filling up the building; that they would take up the terms of the contract and go on in the regular way, and that she was going to help the appellant and see that she did not lose the building. The appellee gave the appellant credit for the payment for the month of July, which the appellant never collected and did not expect to collect.

Both parties misunderstood their rights under the contract witnessed by the various instruments which they had executed. The appellant thought that under the lease she was entitled to a credit of $300 a month regardless of the amount of the net proceeds derived from the building. The appellee, on the other hand, thought that the lease terminated automatically when the net proceeds were less than that amount. The proper construction of the lease was that the appellant was entitled to credit on the contract of sale for the net proceeds from the premises. The appellee did not promise absolutely to pay $300 a month but did promise to pay the net proceeds from the premises. The covenant that the net proceeds should not be less than $300 in any month and that the failure to earn and turn over at least that amount in each month should work a forfeiture of the lease and the lessor should be at liberty forthwith to take possession of the premises was a condition subsequent, for a breach of which the appellee would have the right to take possession of the premises and declare the lease forfeited. A failure to do so and continuing to accept the smaller amounts constituted a waiver of the breach and of the forfeiture when the appellant took possession of the premises. Provisions for the forfeiture of a lease

for breaches of covenants or conditions are construed as voidable only at the option of the lessor. *Channel* v. *Merrifield,* 206 Ill. 278.

It is obvious that the appellee's theory that the lease had been terminated by the fact that the net rents amounted to less than $300 a month was erroneous, and it is equally apparent that there is no basis for the appellant's contention that she is entitled to any credit upon her contract of purchase beyond the net receipts from the operation of the building. Under the contract of sale the appellant was required to pay to the appellee $125 and interest on deferred payments, and the appellee was required to operate the building and credit its net proceeds against the appellant's obligation. The incorrect construction of the contract by the appellant led her to demand in January, 1929, that she should be credited on the contract with $300 a month from April 1, and upon the appellee's refusal to accede to the demand the appellant excluded her from the management of the building and made no payments upon the contract of purchase. She was already in default, for the net proceeds from operating the building prior to January 1 had not amounted to $125 a month, and her default continued until May. The contract provided that time should be of its essence, but the conduct of the parties had been such as to suspend the operation of the provision, though it could be revived upon definite and specific notice. (*Fox* v. *Grange,* 261 Ill. 116.) This notice was given in May, 1929, and when the appellant declined to perform her obligations within the time specified in that notice the provision that time was of the essence of the contract was revived. The appellant being in default, the appellee had the right to insist upon the cancellation of the contract upon equitable terms. The decree was not unjust to the appellant. The appellee was required to restore to her the $5000 which she had paid as a part of the purchase price, and in the meantime she had had $50 a month for part of the period and

the use of an apartment for the remainder of the time. She was required to pay the appellee $678, which was the net amount received by the appellant from January 1, 1929, to the beginning of the suit, less $525, the interest on the mortgage which she had already paid. The appellee does not complain of the decree, and it is affirmed.

*Decree affirmed.*