Nellie Fox, Appellant, *vs.* L. H. Grange, Appellee.

*Opinion filed December 17, 1913.*

1. Specific performance—*a provision that time of payment is the essence of the contract may be waived.* A provision in a contract for the sale of real estate on the installment plan, that the time of payment shall be of the essence of the contract, is lawful and will be enforced in equity if the parties were competent to contract and the provision is in force when the forfeiture was declared; but such provision may be waived by conduct of parties.

2. Same—*a waived or suspended provision cannot be restored except upon definite and specific notice.* Parties to a contract for the sale of land on the installment plan may waive or temporarily suspend the provision that time of payment shall be of the essence of the contract, and where such provision has been waived or suspended it cannot be restored except upon definite and specific notice to the party in default and under circumstances of perfect fairness on the part of the other party.

3. Same—*when provision that time of payment is of the essence of the contract cannot be restored by mere demand.* Where the vendor in a contract for the sale of real estate upon the installment plan has from the beginning of the contract and for a period of five years accepted payments in amounts and at times not in accordance with the contract and has failed to release an encumbrance on the lot according to his agreement, he cannot restore such provision by demanding the whole amount due at once, as he had been threatening for a year to do.

4. Same—*what offer of payment is a sufficient basis for a bill for specific performance.* Where the payments under a contract for the sale of real estate upon the installment plan have extended over a period of five years in small amounts and the amount still due is not accurately known to the purchaser and is difficult of ascertainment, a tender of an amount slightly less than is actually due, coupled with an offer to pay whatever is found due, is a sufficient basis for a bill for specific performance, where the vendor made no objection to the tender because of the amount but because he had determined to stand on his legal rights under his declaration of forfeiture.

Appeal from the Circuit Court of DuPage county; the Hon. C. F. Irwin, Judge, presiding.

S. L. Rathje, and J. A. Russell, for appellant.

R. S. EGAN, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On July 20, 1907, Nellie Fox, the appellant, and L. H. Grange, the appellee, made a written contract in duplicate, by which Grange agreed to convey to Mrs. Fox lot 15 in L. H. Grange's addition to Wheaton for $1100, payable as follows: $200 cash, and $15 on the first day of each month until the balance of the purchase money, with interest at six per cent, should be paid. Grange was to do certain things toward completing the house on the lot and to remove the lien of a trust deed for $1280, and Mrs. Fox was to pay the taxes levied subsequently to the year 1906 and to pay all unpaid special assessments. It was agreed that time of payment should be of the essence of the contract, and in case of the failure of Mrs. Fox to make either of the payments or any part thereof, or perform any of the covenants on her part, the contract should, at the option of Grange, be forfeited and determined and Mrs. Fox should forfeit all payments made by her on the contract, which should be retained by Grange in full satisfaction and liquidation of damages sustained by him, and he should have the right to re-enter and take possession of the lot. Mrs. Fox moved into the house with her six children and has occupied the premises ever since. Although the contract called for a cash payment of $200, Grange accepted $170 as a first payment, and including that payment Mrs. Fox made thirty-five different payments in varying amounts, ranging from $3 to $30, the last payment being on May 6, 1912, and no payment ever amounted to the sum due on the contract. This course of conduct lasted for nearly five years, and during the last year Grange several times told Mrs. Fox that she had allowed the thing to drag along and that he was going to take the property from her unless she

made her payments, but he never did anything except to threaten her. When she made the last payment he told her again that the thing had dragged along and that unless she paid up at once he would take the property from her, and she said that she could not make the payments then because she was out of work and the people whom she had been working for had moved away. Her payments to Grange amounted to $760 and she had paid all the taxes and assessments against the property then due. On June 1, 1912, Grange wrote her a letter saying that he wanted $20 by Saturday night. He had done the things about the house which he was to do except enclosing the closet with ceiling, which had not been done, and on receipt of his letter she wrote him about the closet. He sent the material to the house and engaged a carpenter to do the work, but she wrote him on June 8 that it would be no use to send a carpenter because the toilet was out of commission and the plumbers would have to fix it. She sent the $20 to Grange by her daughter, but he was not in his office and it was not given to him. She had nothing but fragments of the original contract, and in her letter of June 8 she told Grange that if he would give her a new copy and fix up her papers she would give him some money. On July 9, 1912, he served a notice demanding immediate possession, and two days afterward commenced an action of forcible entry and detainer before a justice of the peace. She then employed an attorney, and while the case was pending before the justice the attorney called on Grange and asked him to prepare a statement, from all the memoranda he had, as to the amount due, because the payments were badly mixed up, and when the amount was ascertained he would pay the amount due on the contract. Grange gave the attorney a copy of the contract, but it was not signed and had no endorsements of payments. On July 24, 1912, the attorney tendered to Grange $536.27 and demanded a deed and that Grange should secure a release of the trust deed,

but the tender was refused on the ground that it was too late, and Grange said that he would stand on his legal rights and declare a forfeiture. The trust deed was a lien· on this property and another lot in the same addition of ˋabout equal value. The lot had never been released from the lien and no offer had been made to release it, but Grange had agreed with the owner of the encumbrance that the lot should be released on the payment of about one-half of the amount of the encumbrance. On the refusal of the offer to pay what might be due if Grange would perform on his part, Mrs. Fox filed the bill in this case, asking the court to take an account of the amount due and require Grange to convey the premises and procure a release of the trust deed upon payment of the amount so ascertained. The answer of Grange relied on the declaration and forfeiture, and the court, upon a hearing, dismissed the bill for want of equity, and Mrs. Fox appealed.

By the terms of the contract time of payment was of the essence of the agreement, and a forfeiture was provided for if Mrs. Fox should fail to make either of the payments or any part thereof, or to perform any of the covenants on her part. The parties were competent to contract and the agreement was lawful, and if it was in force according to its terms at the time the forfeiture was declared, a court of equity would not relieve Mrs. Fox from the consequences. Grange, however, might waive the provision of the contract as to time of payment, and a habit of accepting payments of a less amount or after the time stipulated is one of the usual ways of waiving such a provision. Whether a provision of that kind is waived depends upon the facts of the particular case, and it does not necessarily follow that there has been a waiver merely because some payments are accepted after they are ·due. (*Phelps* v. *Illinois Central Railroad Co.* 63 Ill. 468.) The parties to the contract might waive or temporarily suspend the agreement by their conduct, and if there was such a

course of conduct on the part of Grange as to show that the provisions had been waived or suspended it could only be restored upon definite and specific notice. (*Monson* v. *Bragdon,* 159 Ill. 61; *Eaton* v. *Schneider,* 185 id. 508; *Kissack* v. *Bourke,* 224 id. 352.) That there was a waiver in this case cannot be doubted. On the very day of making the contract the cash payment was $30 less than the amount agreed upon, and for nearly five years there was never a payment which equaled the amount due. Perhaps it would not be just to Grange to deny him the right to re-instate or restore the waived provision, but a court of equity ought not to permit him to do it except upon definite and specific notice which Mrs. Fox would understand and under circumstances of perfect fairness on his part. The question would be whether Grange, having waived the provision by a course of conduct extending over nearly five years, could again put it into operation by demanding the whole amount at once and when he had not removed the encumbrance or offered to do so. It is, of course, manifest that a woman who worked for her living and was out of work would be unable to raise the amount due except by encumbering the lot, and she could only do that with a title clear. Grange had been threatening her for a year but had done nothing toward the execution of his threats, and it appears to us that Mrs. Fox had a right to suppose what he said before attempting a forfeiture was of the same character. We think it would violate the principles on which courts of equity act, to permit forfeiture under such circumstances.

The amount tendered by the attorney was $536.27 and at the hearing it appeared that the amount due when the tender was made was $567. Grange refused to take the money, not because of the amount, but because he had determined to stand on his legal rights under the forfeiture. The attorney was ready and willing to pay what might be due, which was difficult of ascertainment, and Grange

absolutely refused to have anything to do with him. As Grange made no objection to the amount tendered and his refusal was upon another ground the offer was sufficient as a basis for the bill. There were also objections to some other matters connected with the tender, but as Grange was insisting upon the forfeiture and denying to Mrs. Fox any right whatever, he could not take advantage, in a court of equity, of objections which he might have made but did not point out.

The decree is reversed and the cause remanded.

*Reversed and remanded.*