No. 42,212

GALEN E. HOWELL and ELIZABETH L. TURNER, *Appellees*, v. F. J. ABLAH, *Appellant*.

(361 P. 2d 872)

Opinion filed May 13, 1961.

*E. P. Villepigue,* of Wichita, argued the cause, and *I. H. Stearns,* of Wichita, was with him on the briefs for the appellant.

*Donald R. Newkirk,* of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Robert J. Hill, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell,* and *Willard B. Thompson,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: Galen E. Howell and Elizabeth L. Turner as plaintiffs brought this action, based upon a promissory note and the endorsement thereon, against the defendant F. J. Ablah. Following a jury trial judgment was rendered for plaintiffs in accord with the verdict, hence this appeal.

The pleadings are not in question and all that need be said regarding them is that they join issues on all questions respecting the defendant's liability as surety and guarantor of the note in question under and by virtue of his endorsement of that instrument.

After a careful examination of a long and unusually confusing record we are convinced it would add nothing to our reports and only extend confusion to attempt to make a detailed statement of the evidence adduced by the parties in support of their respective positions in the court below. Moreover, although they may not suffice for purposes of depicting a complete factual picture, we are completely satisfied that certain salient facts of record are decisive of all but one of the appellate issues involved. Those facts, which we pause to note our examination of the record discloses must be regarded as established by uncontroverted evidence, about which there can be no dispute, may be stated thus:

The note involved, dated July 6, 1956, was executed by the Wichita Manufacturing Company, Inc., in favor of Ablah Manufacturing Company, the latter company being a family partnership headed by F. J. Ablah who, so far as matters here involved are concerned, individually transacted the business of the partnership affairs. Such company had sold certain equipment to the corporation above named, and the note represented the balance of the purchase price which was made payable in twenty-three monthly payments of $400 each commencing on the first day of October, 1956, and a final payment of $22,075.00. The note further provided for interest at the highest lawful rate and that upon nonpayment of any installment at its maturity all remaining installments should become immediately due and payable at the option of the holder. It also specified that the makers and guarantors thereof waived notice of nonpayment, protest, presentment and demand.

The equipment sold under the contract was also covered by a note and mortgage given by the corporation (Wichita Manufacturing Company, Inc.), to the Kansas State Bank of Wichita.

Immediately following the signature of the maker of the note in issue was an appendage, signed by F. J. Ablah personally, reciting in substance that the note was subordinated to payment in full of the loan of the bank and that such note would be financed for additional two years if desired by the purchaser (Wichita Manufacturing Company, Inc.).

The note and contract was transferred to the plaintiffs by the defendant on July 18, 1957. The note was endorsed by defendant as follows:

The undersigned hereby waive(s) presentment and demand for payment, protest and notice of protest and consent(s) that the holder hereof may, without notice to and without releasing the liability of the undersigned hereunder as unconditional endorser(s), compound or release any rights against, or grant extensions of time to the maker.

ABLAH MFG. Co.
By s/ F. J. Ablah.

Prior to the transfer of the note, and as consideration for its subsequent transfer, defendant had received from D. O. W. Framing Company, Inc., wholly owned by plaintiff Howell and Lee Turner, husband of plaintiff Elizabeth L. Turner, a deed to a manufacturing property in Great Bend, in which deed defendant was personally named as grantee. The title to such property has never been relinquished by the defendant.

The property so conveyed by the deed had originally been included, at an agreed valuation of approximately $60,000.00, as part of the consideration to be paid by plaintiff Howell and Lee Turner for stock in the Wichita Manufacturing Company, Inc., under a contract proposed between them and the Wichita Manufacturing Company, Inc. D. J. Bitinis and George Ablah, the defendant's son, were then the sole stockholders of the Wichita Manufacturing Company, Inc., the maker of the involved note. Although Plaintiff Howell and Turner paid $30,000.00 in cash at the outset for stock in this corporation, they disaffirmed the contract and returned their stock after dissatisfaction with the represented financial condition of the corporation.

The maker of the note, Wichita Manufacturing Company, Inc., was subsequently placed in receivership and its creditors were enjoined from suit. The Kansas State Bank, under supervision of the

court, sold the property securing its note and the note here involved. The sale price was insufficient to pay the bank's note and a deficiency on the bank's note still existed after the receiver had liquidated all the assets of the maker of the note. The remaining assets were not even sufficient to pay off tax claims.

During the course of the trial in the court below defendant demurred to the plaintiffs' evidence. This demurrer was overruled. Defendant did not stand upon his demurrer but elected to introduce evidence in his own behalf. Following introduction of all the evidence defendant did not again raise the sufficiency of the evidence by a motion for a directed verdict. However, the record does disclose that the plaintiffs challenged the sufficiency of all the evidence to go to the jury by a motion for directed verdict, which motion was overruled.

Following action as above indicated the court gave the jury written instructions. To these the only serious objection interposed by defendant was to Instruction No. 3 which, so far as pertinent to the issues raised on appeal, reads:

"You are instructed that your verdict in this case must be for the plaintiffs unless you find that the defendant, F. J. Ablah, was induced by fraud or misrepresentation to execute the endorsement of the note."

In connection with the foregoing Instruction it is worthwhile to note a statement made by defendant in his abstract which reads:

"This matter was submitted to the jury for their consideration only of the endorsement of the note attached to plaintiffs' Exhibit 1, and the delivery thereof by the defendant, Ablah, to plaintiffs. This left only one matter to be determined by the jury that was whether or not the endorsement of the note was secured by fraud and misrepresentations or false representations on the part of the plaintiffs, or H. Lee Turner, husband of the plaintiff, Elizabeth L. Turner."

Also to point out, that with respect to the verdict submitted which was general in form, the same instrument contains the following unchallenged statement:

"It was agreed by the respective parties that the case was being submitted generally to the jury for a verdict in favor of the plaintiff or defendant, and then when the verdict is received and it is necessary, the court will determine the distinct amount for which judgment should be entered."

Defendant's attempt to have a review of the trial court's order overruling his demurrer to the evidence is challenged at the outset by the plaintiffs' who, citing *Ziegelasch v. Durr,* 183 Kan. 233, 326 P. 2d 295; *Ogilvie v. Mangels,* 183 Kan. 733, 332 P. 2d 581; *Liberty*

*Glass Co. v. Bath,* 187 Kan. 54, 353 P. 2d 786, assert this court has made it clear that a party who claims that his opponent's evidence is insufficient to support an adverse judgment must seek judgment from the trial court, not only by a demurrer, but by motion for directed verdict also, after all the evidence in the trial of the case has been presented. Conceding that is the rule, it has no application where—as here—the plaintiffs saw fit to move the trial court for a directed verdict at the close of all the evidence, thus challenging the attention of the trial court to the sufficiency of all such evidence. The applicable rule is well-stated in *Anderson v. Thomas,* 184 Kan. 240, 336 P. 2d 821, where it is held:

"Where a defendant's demurrer to the plaintiff's evidence is overruled and the defendant elects to introduce evidence on his own behalf, the rule stated in *Ziegelasch v. Durr,* 183 Kan. 233, 326 P. 2d 295, requiring the defendant to again raise the sufficiency of the evidence by a motion for a directed verdict at the close of all the evidence or be deemed to have waived the sufficiency of the plaintiff's evidence as raised by his former demurrer, is overcome and the defect satisfied where the plaintiff at the close of all the evidence demurs to the defendant's evidence and moves the trial court for a directed verdict, since it challenges the attention of the trial court to the sufficiency of all the evidence to go to a jury." (Syl. ¶ 13.)

It follows the plaintiffs' contention the order overruling defendant's demurrer to the evidence is not reviewable lacks merit and cannot be upheld. However, it should be pointed out that, under another well-established rule, since defendant introduced evidence after his demurrer to the evidence was overruled, the question whether such order was proper does not depend upon the state of the plaintiffs' evidence at the time defendant's demurrer was lodged against it but on the state of the evidence at the close of the case (see *Lechleitner v. Cummings,* 159 Kan. 171, 152 P. 2d 843; *Wilson v. Holm,* 164 Kan. 229, 188 P. 2d 899; *Tuggle v. Cathers,* 174 Kan. 122, 127, 254 P. 2d 807; *Ziegelasch v. Durr,* 235, *supra; In re Estate of Rogers,* 184 Kan. 24, 234 P. 2d 830).

The paramount question raised by defendant, in support of his position the trial court erred in overruling his demurrer to the evidence and on which he spends much time in his brief, is to the effect the note involved in this case was nonnegotiable, hence his endorsement of such instrument merely transferred title to the instrument without guaranteeing its payment. In support of his position he cites *Iron Works v. Paddock,* 37 Kan. 510, 15 Pac. 574; *Foley v. Hardy,* 122 Kan. 616, 253 Pac. 238; *Hayter v. Dinsmore,* 125 Kan. 749, 265 Pac.

1112, and other decisions of like import, holding that the endorsement in blank of a name upon a nonnegotiable note simply transfers the title of a party, and does not make him liable as if such note were a negotiable instrument. We have no quarrel with the rule announced in such decisions but we do disagree with defendant's conclusion they support his position the holder of a nonnegotiable note cannot become liable as a surety or guarantor for its payment by the terms of an endorsement. This conclusion, we may add, finds support in *Iron Works v. Paddock,* supra, one of the very cases on which defendant relies, wherein, in clear and concise language, it is said in substance that even though the endorsement in blank of a name upon a nonnegotiable note does not guarantee its payment, the endorser may guarantee its payment by a contract which is either expressed in the endorsement or by an independent contract between the parties. For other authorities supporting this conclusion see 10 C. J. S., Bills and Notes, §§ 28, 30, pp. 437, 439, 441; 38 C. J. S., Guaranty, §§ 38, 46, pp. 1177, 1194, 8 Am. Jur., Bills and Notes, §§ 556, 559, 560, pp. 261, 263; *First Nat. Bank v. Falkenhan,* 94 Cal. 141, 29 Pac. 866; *Quinn v. Rike,* 50 Cal. App. 243, 194 Pac. 761; *Nuetzel v. Mackie,* 80 Cal. App. 768, 253 Pac. 166. For a recent and interesting decision of this court defining a guaranty, outlining the nature of a guaranty contract, and discussing questions pertaining to the guarantor's liability, see *Bomud Co. v. Yockey Oil Co.,* 180 Kan. 109, 299 P. 2d 72.

Turning to the endorsement, which we have heretofore set forth at length in this opinion and need not be repeated, it can now be stated that after careful consideration of the construction to be given its terms we are convinced their clear and unequivocal language impose upon defendant, as a matter of law, the obligations of an unconditional surety and/or guarantor for all purposes of payment of the note in question. Indeed, keeping in mind that under the terms of the endorsement the defendant expressly waived presentment and demand for payment, protest and notice of protest, with respect to the note in question and then expressly recognized that his liability was that of an unconditional endorser of the note, we fail to see where it is possible to give the provisions of such endorsement any other construction.

In connection with his position the demurrer to the evidence was improperly overruled defendant contends that the evidence (1) fails to disclose any consideration for the unconditional guarantee en-

dorsed on the note; (2) discloses that the action was prematurely instituted; and (3) fails to disclose any demand was made upon the makers of the note prior to the commencement of the instant action. We are not disposed to labor these contentions. It suffices to say the first is wholly fallacious and devoid of merit for the reason the uncontradicted evidence establishes that defendant received and still retains the Great Bend property as consideration for such endorsement; the second lacks merit because the note provided that upon nonpayment of any installments—some of which it is to be noted are conceded to have been in default at the time the action was commenced—all remaining installments became payable immediately, and in both the note and endorsement presentment, demand, protest and notice of protest were waived; and the third is equally lacking in merit because of our decisions (see *e. g., Furst v. Buss,* 104 Kan. 245, 248, 178 Pac. 411), holding that where a guaranty is unconditional, the default of the party, whose contracts are guaranteed, matures the liability of the guarantors, and they may be proceeded against without awaiting a fruitless execution against the defaulting principal.

Our disposition of the foregoing questions raised by defendant lead to the inescapable conclusion that the trial court's order overruling the demurrer to his evidence was proper and must be upheld. Moreover, after a careful examination of the record, we are convinced that tribunal's action with respect to such questions disposed of all but one of the justiciable issues raised by the pleadings, *i. e.,* fraud and misrepresentation in procuring defendant's execution of the heretofore quoted endorsement. It necessarily follows, and we therefore hold, that the trial court properly took all issues so disposed of from the jury and did not err in instructing that body that its verdict in the case must be for the plaintiffs unless it found that the defendant was induced by fraud or misrepresentation to execute the endorsement of the note.

By its general verdict in favor of the plaintiffs the jury resolved all questions relating to fraud and misrepresentation involved in the case against the defendant and in favor of the plaintiffs (*Grigsby v. Jenkins,* 183 Kan. 594, 331 P. 2d 284). Conceding the evidence as to fraud and misrepresentation was conflicting the record discloses ample substantial competent evidence to uphold the jury's determination of all questions raised with respect thereto. Therefore under the rule of this court, so well-established that it needs no citation of the authorities supporting it, the verdict of the jury,

the trial court's approval thereof, and its judgment in accord therewith must be upheld.

One question, heretofore noted as reserved by agreement between the parties for the trial court's determination, remains. It relates to the amount of the judgment and, as we understand it, in view of the issues heretofore decided adversely to defendant's position, is limited to interest allowed by the trial court on the principal of the note.

In an opinion overruling the defendant's motion to delete all interest from the judgment the trial court held:

"It is my opinion and ruling that interest on the note, which is the subject matter of this case, will be figured at the rate of 10% per annum on all delinquent payments from and after date of their delinquency. The first payment was due October 1, 1956, and when not paid became delinquent on that date. Such payment will draw interest at the rate of 10% per annum from October 1, 1956, until and including February 9, 1958.

"The second payment was due November 1, 1956, and when not paid on that date became delinquent. The second payment will draw interest at the rate of 10% per annum from and after November 1, 1956, until and including February 9, 1958. The interest on the payments due up to February 9, 1958, shall be figured as for the above first two payments.

"When the holder exercised his option and declared the note due and payable on February 10, 1958, by filing suit, the entire principal amount of the note became due and payable and should draw interest at the rate of 10% per annum from that date."

Resort to the note discloses that it provided for monthly installments which bore no interest until due but which carried interest at the highest legal rate (then 10% under what is now G. S. 1959 Supp., 16-202) after each installment matured. Such note also contained a provision that "Upon the non-payment of any installment at its maturity, all remaining installments shall at the option of the legal holder become immediately due and payable." Plaintiffs exercised their option to make payments under such note due and payable when they filed the instant action on February 10, 1958, and at that time several of the installments were due and unpaid. Under such circumstances, since the note expressly provided for an option accelerating the maturity of the note on default of any installment and plaintiffs exercised that option, we have no difficulty in concluding the trial court's action in allowing interest in accord with the express provisions of such instrument was proper and must be upheld. Indeed defendant cites, and we know of, no decisions of this court warranting a contrary conclusion.

The judgment is affirmed.