No. 96,697

FOUNDATION PROPERTY INVESTMENTS, LLC, *Appellee*, v. CTP, LLC, *Appellant*.

(186 P.3d 766)

Opinion filed July 3, 2008.

*Joshua M. Ellwanger*, of Blackwell Sanders Peper Martin LLP, of Kansas City, Missouri, argued the cause and was on the briefs for appellant.

*Amy Fellows Cline*, of Triplett, Woolf & Garretson, LLC, of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

NUSS, J.: This case requires us to determine whether a lender's right to enforce a promissory note's acceleration clause has been waived by lender's repeated acceptance of late monthly payments from its borrower. The district court granted summary judgment to lender, Foundation Property Investments, LLC (Foundation), holding that Foundation was entitled to accelerate. The borrower, CTP, LLC (CTP), appealed, and the Court of Appeals reversed, holding that Foundation waived its acceleration rights. *Foundation Property Investments v. CTP*, 37 Kan. App. 2d 890, 159 P.3d 1042 (2007). We granted Foundation's petition for review; our jurisdiction is under K.S.A. 20-3018(b).

Foundation presents three questions on appeal, which we distill and answer as follows:

1. In addition to an acceleration feature, does the promissory note also contain an anti-waiver feature? No.
2. By repeatedly accepting late payments, has Foundation waived its right to accelerate the loan? Yes.

3. If Foundation has waived its right to accelerate, does it nevertheless have any recourse against CTP for continued late payments? Yes.

Accordingly, we affirm the Court of Appeals and reverse the district court.

## FACTS

There is no dispute about the essential facts. In April 2004, CTP, an Iowa limited liability corporation, purchased a truck stop in South Hutchinson, Kansas. In connection with the purchase, CTP borrowed $96,000 from Foundation, a Kansas limited liability corporation. The loan was evidenced by a promissory note signed by John D. Daniels, manager for CTP, providing in relevant part:

"FOR VALUE RECEIVED, the undersigned promises to pay to the order of Foundation Property Investments, L.L.C., the sum of Ninety Six Thousand Dollars ($96,000.00) with interest thereon from April 26, 2004, payable monthly at the rate of Five and Three Quarters Percent (5.75%) per annum as follows:
Six Hundred Seventy Three Dollars and Fifty Four Cents ($673.54) including interest, on or before the 1st day of June, 2004, and Six Hundred Seventy Three Dollars and Fifty Four Cents ($673.54) including interest, on or before the 1st day of each and every month thereafter until June 1, 2009 when all sums due hereunder are due and payable in full.

"Interest shall first be deducted from the payment and any balance shall be applied on principal.

"Principal and interest not paid when due shall draw interest at the rate of twelve percent (12%) per annum. Upon default in payment of any interest, or any installment of principal, the whole amount then unpaid shall become immediately due and payable at the option of the holder without notice. The undersigned, in case of suit on this note, agrees to pay attorney's fees.

"Makers, endorsers and sureties waive demand of payment, notice of non-payment, protest and notice. Sureties, endorsers and guarantors agree to all of the provisions of this note, and consent that the time or times of payment of all or any part hereof may be extended after maturity, from time to time, without notice."

That same month, CTP and Foundation Properties Corporation (FPC), a corporation closely related to Foundation, entered into a contract for FPC to manage the truck stop. Part of FPC's management duties included making CTP's obligated monthly payments to Foundation.

CTP, through FPC, paid the first four installments on or before their due dates. Beginning in October 2004, however, and continuing through July 2005, CTP, either indirectly through FPC or directly, was late in making all payments. During this period, on April 1, 2005, the relationship between the parties changed: CTP took back from FPC the managerial duties, including responsibility for making its monthly loan payments.

In a letter dated July 8, 2005, Foundation's counsel informed CTP manager Daniels that a default existed in the payment of the interest and principal due July 1. As a result, counsel advised that Foundation was "exercising its option to declare all of the unpaid principal and interest immediately due and payable." Foundation demanded full payment of the note, $94,593.77 in principal and interest, by July 31. In a July 26 letter, CTP's counsel responded that because Foundation had continually accepted late payments, the parties had established a course of dealing permitting payments to be made after the first day of the month in which they are due.

Two days later, on July 28, Foundation sued CTP to collect the full amount due under the note. After the parties filed competing motions for summary judgment, the trial court granted Foundation's motion. It held that Foundation's repeated acceptance of late payments did not constitute a waiver of the option to accelerate and that Foundation was entitled to payment of the loan's full principal, accrued interest, attorney fees, and costs, for a total amount of $110,975.58.

The Court of Appeals reversed, holding that Foundation waived its acceleration rights, particularly in the absence of an anti-waiver clause. It remanded with instructions to the trial court to enter judgment in favor of CTP, *i.e.*, reinstatement of the note and terms. 37 Kan. App. 2d at 896-901.

Additional facts will be provided as necessary to the analysis.

## ANALYSIS

*Standard of Review*

There are no disputed material facts. Moreover, we must construe a promissory note. Accordingly, our review is de novo. *Bomhoff v. Nelnet Loan Services, Inc.*, 279 Kan. 415, 419-20, 109 P.3d

1241 (2005) (appellate review of district court's grant of summary judgment on undisputed material facts is de novo); *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 441, 109 P.3d 1146 (2005) ("legal effect of a written instrument is a question of law for the court to decide; it may be construed and its legal effect determined by the appellate court regardless of the construction made by the trial court").

Issue 1: *The promissory note does not contain an anti-waiver feature.*

The arguments

At the trial court, Foundation focused on what it characterized as the clear language of one provision of the promissory note: "Upon default in payment of *any* interest, or *any* installment in principal, the whole amount then unpaid shall become immediately due and payable at the *option* of the holder without notice." (Emphasis added.) It argued that the word "any" signifies it may accelerate at the default of "any" payment, regardless of when the default occurs or even whether a previous default had occurred.

Foundation further argued that the word "option" meant that CTP, the drafter of the note, specifically granted Foundation the power to decide if and when to exercise the acceleration right. As a result, it did not waive its right to pursue its contractual remedies merely because it opted not to do so for a 9-month period. It cited, among other authorities, *Nelson v. Robinson*, 184 Kan. 340, 347, 336 P.2d 415 (1959), for the general rule that "no mere indulgence or silent acquiescence can be construed as a waiver of rights under a contract."

In granting summary judgment, the trial court agreed that the note language was clear and unambiguous and entitled Foundation to relief. Its analysis was straightforward, with particular emphasis upon the word "option":

"Although plaintiff accepted late payments for a number of months, and thus chose to forego a declaration of default during those months, the note clearly makes a declaration of default optional on plaintiff's part. An option is simply that. It is there to be exercised if and when the holder of the option chooses to do so.

"The plaintiff did not waive its right to pursue its contractual remedies merely because it chose to do so for a 9-month period (October 04-June 05)."

The Court of Appeals stated that a lender's acceptance of a late or partial payment will generally waive the right to declare default and accelerate the note citing, among other authorities, *Postal Savings & Loan Ass'n v. Freel*, 10 Kan. App. 2d 286, 698 P.2d 382 (1984). It essentially rejected the trial court's heavy reliance upon the word "option" and specifically rejected Foundation's "attempts to analogize the anti-waiver language in *Freel* to the language in the present case, [because] it is clear that the CTP note did not contain a similar anti-waiver provision." *Foundation*, 37 Kan. App. 2d at 897. The *Freel* anti-waiver provision stated: " 'Any waiver of any payment hereunder or under the instrument securing this note at any time, shall not, at any other time, be taken to be a waiver of the terms of this note or the instrument securing it.' " *Freel*, 10 Kan. App. 2d at 287. After concluding that "the note does not contain an anti-waiver provision," the Court of Appeals then held that Foundation's conduct constituted a waiver of its right to accelerate and reversed and remanded for entry of judgment for CTP. *Foundation*, 37 Kan. App. 2d at 900.

On appeal to this court, Foundation repeats its trial court arguments. It also contends that the Court of Appeals basically rewrote the note by ignoring the plain meaning of the clear and unambiguous language, *i.e.*, "any" and "option." Foundation also points out that under additional language, CTP specifically waived demand of payment, notice of nonpayment, and protest and notice, which allegedly "further underscores Foundation's ability to accelerate the note at *any* default, without notice to or opportunity for protest by, CTP."

Foundation concedes that under *Freel*, an intent to waive may be inferred from conduct. However, quoting *Freel*, it argues that no "inference of waiver can be drawn when the unambiguous language of the contract states a contrary intention." 10 Kan. App. 2d at 287. In short, Foundation contends that its unambiguous note language is the functional equivalent of the express anti-waiver clause in *Freel*.

In response, CTP primarily cites *Smith v. Smith*, 186 Kan. 728, 735, 352 P.2d 1036 (1960), in support of the general rule that acceleration rights can be waived by conduct of the lender. It contends that Foundation waived its acceleration right by repeatedly accepting late payments. While CTP recognizes that an anti-waiver feature can prevent a party from waiving an acceleration right by accepting late payments, it asserts, as the Court of Appeals held, that this note did not contain such a feature.

Discussion

The essence of Foundation's argument is that the following note provision serves dual purposes, *i.e.*, it operates as both an acceleration clause and an anti-waiver clause. "Upon default in payment of *any* interest, or *any* installment in principal, the whole amount then unpaid shall become immediately due and payable at the *option* of the holder without notice." (Emphasis added.) Under Foundation's construction of this provision in this 60-month note it potentially could, for example, accept late payments every month for 55 months, and after no timely payment in the 56th month, nevertheless accelerate the note for the balance to be paid in one sum.

Traditionally, acceleration and anti-waiver clauses serve distinctly different purposes. An acceleration clause provides that the entire balance of the obligation becomes due and payable upon the occurrence of any event of default. By contrast, an anti-waiver clause provides that no waiver of any installment payment or other right under the note shall operate as a waiver of any other payment or right. See generally 1 Clark, The Law of Secured Transactions under the Uniform Commercial Code, ¶ 2.02 [5], p. 2-66 (rev. ed. 2008).

We disagree with Foundation's argument that the note provision serves both purposes. The provision is simply an acceleration clause. More particularly, it is an "optional acceleration" clause.

We support this conclusion by initially noting that Kansas recognizes differences between two basic types of acceleration clauses. In one type of clause, upon default the acceleration is automatic. In the other type of clause, upon default whether acceleration occurs is optional with the lender.

Despite note language indicative of automatic acceleration clauses, a majority of states nevertheless considers them as optional. Kansas is not one of those states. See *Smith*, 186 Kan. at 734. In this state, where the acceleration is absolute in its terms—where the note according to its terms becomes due on default and does not contain any optional features—the entire principal of the note becomes automatically due without the necessity of a declaration of the right or an election on the part of anyone. 186 Kan. at 734.

Two Kansas cases illustrate the difference. In *Miles v. Hamilton*, 106 Kan. 804, 806, 189 Pac. 926 (1920), this court addressed an automatic acceleration clause and stated:

"The mortgage . . . provided that if any interest should not be paid when due the whole of the debt, principal and interest, should immediately become due and payable. . . .

"By the language of the acceleration clause . . . the default in the interest payment of its own force, *without any declaration, notice, or exercise of an option on the part of the creditor*, matured the entire debt . . . . [Citations omitted.]" (Emphasis added.)

*Miles*' automatic acceleration clause is in contrast to the optional acceleration clause this court addressed 1 year earlier in *Bank v. Grisham*, 105 Kan. 460, Syl. ¶ 10, 185 Pac. 54, (1919), where we stated:

"Where a debt is secured by a mortgage on realty, and the note evidencing the debt merely provides that default in the payment of principal, interest or taxes shall, *at the holder's option*, mature the whole debt, the debt is not absolutely due at the first default of interest. *The mortgagee may refrain from exercising his option* . . . ." (Emphasis added.)

Consequently, for a lender in Kansas to reduce the chances of automatic acceleration upon default, the promissory note should contain some optional acceleration language. No particular words are necessary to convey the concept, but certainly the use of "option" is strongly indicative, if not dispositive:

"It is clear that an optional acceleration clause need not contain *the express term that the acceleration was 'at the option'* of one of the parties. Any term clearly conveying the idea that one of the parties has the right to decide *whether or not*, in case of default, to declare the outstanding liability due is in the legal sense of

the word an *optional acceleration clause.*" (Emphasis added.) Annot., *Acceleration of note or mortgage as automatic or optional*, 159 A.L.R. 1077, 1093.

Consistent with the annotation's suggestion, Kansas has considered a variety of note provisions—some containing language similar to Foundation's in the instant case—as acceleration clauses. See *Howell v. Ablah*, 188 Kan. 244, 251, 361 P. 2d 872 (1961) (" 'Upon the non-payment of *any* installment at its maturity, all remaining installments shall at the *option* of the legal holder become immediately due and payable.' [Emphasis added.]"). Similar, yet more expansive, language appeared in *TMG Life Ins. Co. v. Ashner*, 21 Kan. App. 2d 234, 249, 898 P.2d 1145 (1995):

"Default; Late Charge. The whole of the principal sum and interest . . . shall become due and payable *at the option of the Holder hereof,* after default in the receipt of payment of *any principal* hereof, interest thereon, or the payment of *any other sum* due hereunder or under the terms of the Mortgages or the Security Documents, or after any other default in the performance of the covenants or terms of this Note . . . .' " (Emphasis added.)

Note language virtually identical to that contained in the instant case was addressed by the Iowa Supreme Court in *Dunn v. General Equities of Iowa, Ltd.*, 319 N.W.2d 515 (1982). Regarding the two notes, the court stated in important part: *"The acceleration clauses provide*: 'Upon default in payment of *any* interest, or *any* installment of principal, the whole amount then unpaid shall become due and payable forthwith, at the *option* of the holder without notice.' " (Emphasis added.) 319 N.W.2d at 515.

We acknowledge that neither the *Dunn* court's opinion nor the cited Kansas opinions addressed a possible lender argument that these note provisions served as both optional acceleration clauses and anti-waiver clauses. Frankly, the parties have not cited, and we have not located, any appellate decisions where this dual-purpose-clause argument has been advanced construing such language. Nevertheless, we find some value in the cited cases' characterizations and analyses of these provisions as simply "acceleration clauses." See, *e.g.*, *Howell*, 188 Kan. at 251 ("note expressly provided for an option accelerating the maturity of the note on default of any installment and plaintiffs exercised that option"); *Dunn*, 319 N.W.2d at 517 ("The trial court was correct in holding that accel-

eration options in installment notes can be waived by a course of dealing of accepting late payments.").

From the clear language of the note provision in the instant case, we readily conclude that it contains an option. From the clear language of that note provision, as confirmed by the clear language contained in the notes from case law discussed earlier, we further conclude that the option relates to acceleration. See Annot., 159 A.L.R. at 1093. Were this option to accelerate not contained in the note, in Kansas the acceleration would be automatic upon default. See, *e.g., Miles,* 106 Kan. at 806. However, we cannot conclude that the language typically inserted to avoid automatic acceleration upon default, *i.e.,* to provide the lender some degree of flexibility, also automatically serves an anti-waiver purpose.

We further conclude that the note's clear optional acceleration language cannot reasonably be characterized as representing anything more, *e.g.,* anti-waiver. *Cf. Kansas Heart Hospital v. Idbeis,* 286 Kan. 183, 205, 184 P.3d 8 (2008) ("[T]he language of [a] contract will control, not as subjectively understood by either party but as understood by a hypothetical reasonable third party.") Accordingly, Foundation's fall-back argument—that the language is ambiguous and must be construed against CTP as drafter—need not be reached.

Although not central to our analysis, we also observe that to construe this language as also containing an anti-waiver feature would create certain redundancies in those promissory notes which contain not only similar optional acceleration clauses but also clearly expressed anti-waiver clauses. Simply put, why have separate language if the same language serves both these purposes?

This redundancy point is most clearly illustrated in *Phipps v. First Federal Sav. & Loan,* 438 N.W.2d 814 (S.D. 1989). There, the mortgage note stated:

" '[1] If *any* deficiency in the payment of *any* installment under this note is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the *option* of the holder of this note. [2] *Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.'* " (Emphasis added.) 438 N.W.2d at 815.

The *Phipps* court correctly characterized the first sentence in the provision as containing an optional acceleration feature and the second as containing an anti-waiver feature. It stated: "Nor can waiver be based upon First Federal's forbearance regarding Phipps' earlier delinquencies in payment, because the mortgage contained *an anti-waiver clause* providing that failure to exercise *the acceleration option* did not constitute a waiver of First Federal's right to exercise it in the event of future defaults." (Emphasis added.) 438 N.W.2d at 817-18.

This point is illustrated in Kansas by *Riley State Bank v. Spillman*, 242 Kan. 696, 750 P.2d 1024 (1988). There, after small business borrowers made late payments on a promissory note 2 months in a row and missed the payment deadline the following month, the lender declared default and took possession of the inventory. It eventually sued to foreclose its security interest and obtain a money judgment on the note, presumably after acceleration. This court set forth the acceleration clause as follows:

"The 'Additional Provisions' of the security agreement signed by the Spillmans stated: 'Upon the happening of . . . (i) default in the payment . . . , the Secured Party *at its option may declare all of the Obligations to be immediately due and payable* and shall then have the remedies of a secured party under the Commercial Code, or other applicable law.' " (Emphasis added.) 242 Kan. at 700.

Unlike the instant case, the *Spillman* note also contained a separate, and clear, anti-waiver clause which stated: " '*No waiver by the Secured Party of any default shall* be effective unless in writing nor *operate as a waiver of any other default or of the same default on a future occasion.*' " (Emphasis added.) 242 Kan. at 701.

This court examined the anti-waiver clause and concluded:

"The clear meaning of the language is the Bank's lack of objection to late payments did not operate as a waiver, . . . and the Bank's tolerance of late payments did not waive its right to claim a default in the future. . . .

"The clear meaning . . . establishes the Bank did not waive its right to declare default upon late payment . . . . We hold the debtor was in default on his note." 242 Kan. at 701.

We acknowledge that in *Spillman* the anti-waiver clause could apply to more scenarios than just failure to accelerate on default. Accordingly, it is perhaps more accurately characterized as an over-

lapping instead of an absolute redundancy as in *Phipps*. Nevertheless, the overlap is considerable, as acceleration is probably the most commonly used default weapon in the lender's arsenal. It is also important to note that the *Spillman* court did not rely upon construing the "option" language in the default/acceleration clause as containing an anti-waiver feature—as Foundation would suggest—for its lender's relief. Rather, it relied exclusively upon the clear anti-waiver clause.

This overlapping point is also illustrated in *Westinghouse Credit Corp. v. Shelton*, 645 F.2d 869 (10th Cir. 1981). There the lender routinely accepted late payments from its borrower under an installment contract. It eventually accelerated full payment of the principal and filed suit. Paragraph 3 of the installment contract addressed default, *i.e.*, borrower's failure " 'to perform or comply with *any* of the covenants or conditions of this agreement, or any note, in accordance with its terms or fail[ure] to pay *any other indebtedness* or any extension or renewal thereof.' " (Emphasis added.) 645 F.2d at 870. Like the instant case, paragraph 4 addressed optional acceleration: "Upon default, Westinghouse had the *option* under paragraph 4 to 'declare the entire principal amount of this Agreement or any other indebtedness to be immediately due and payable without notice to the Buyer.' " (Emphasis added.) 645 F.2d at 870.

Finally, unlike the instant case, paragraph 6 of the *Westinghouse* contract contained an express anti-waiver feature:

" 'The waiver or indulgence of any default by the Buyer of any provision of this Agreement or any promissory note which it secures shall not operate as a waiver of any subsequent default by the Buyer of such provision or as a waiver of any of the other rights of [Westinghouse] herein. Time shall be deemed the essence of this Agreement.' " 645 F.2d at 870.

As in *Spillman*, the court did not rely upon construing the "optional" language in the acceleration clause, Paragraph 4, as also containing an anti-waiver feature, as Foundation would suggest. Rather, it relied upon the clear anti-waiver language in Paragraph 6. *Westinghouse*, 645 F.2d at 873-74.

In addition to illustrating this overlapping point, *Westinghouse* also somewhat belies Foundation's argument that the note's lan-

guage specifically waiving demand of payment, notice of nonpayment, and protest and notice "further underscores Foundation's ability to accelerate the note at *any* default, without notice to or opportunity for protest by, CTP." As shown, the *Westinghouse* note provides that acceleration could be performed "without notice to the Buyer," yet the note also contained an express anti-waiver clause. We are thus unable to agree with Foundation.

For all these reasons, we are unable to construe the standard note language in the instant case as containing an anti-waiver feature. To do so would also bring perplexity, not the desired clarity, to credit transactions. Lenders currently without express anti-waiver features in their standard promissory notes would have no incentive to add them; they would just argue the feature was suggested elsewhere in the note. Similarly, lenders currently *with* express anti-waiver features in their standard notes would have an incentive to remove them as superfluous, at least for oft-used options to accelerate. See, *e.g.*, *Phipps*. Accordingly, we strongly encourage the use in Kansas of clearly stated anti-waiver provisions such as those contained in *Spillman* and in *Freel*. See also 1 Clark, The Law of Secured Transactions under the Uniform Commercial Code, ¶ 2.02 [5], pp. 2-65 and 2-66 ("[T]ypical clauses found in a well-drafted security agreement" include an acceleration clause and an anti-waiver clause.).

Issue 2: *By repeatedly accepting late payments, Foundation has waived its right to accelerate the loan.*

In general, "[w]aiver is an intentional relinquishment of a known right and intention may be inferred from conduct." *Freel*, 10 Kan. App. 2d at 287 (citing *Iola State Bank v. Biggs*, 233 Kan. 450, 458-59, 662 P.2d 563 [1983]); see 13 Williston on Contracts § 39:27 (4th ed. 2000) (Waiver of a contract provision may be implied from the parties' conduct.). More specific to our circumstances, "a past practice of excusing defaults occasioned by late payments may under certain circumstances be construed as an implied waiver of an acceleration clause." *Freel*, 10 Kan. App. 2d at 287 (citing *Smith*, 186 Kan. at 735). In *Smith*, this court held that the appellant waived

her right to insist upon full note maturity under the acceleration clause.

Because the trial court essentially construed the note provision as the functional equivalent of a dispositive anti-waiver clause, it did not really determine whether Foundation waived its rights to accelerate by repeatedly accepting late payments from CTP. By contrast, after rejecting Foundation's argument for the existence of an anti-waiver feature, the Court of Appeals found such a waiver through course of dealing citing, among numerous authorities, *Dunn*, 319 N.W.2d at 516-17 (holding that payees waived their right to invoke acceleration clauses by accepting late payments on several prior occasions). *Foundation*, 37 Kan. App. 2d at 898-901.

Before this court, CTP agreed with the Court of Appeals' reliance upon *Dunn* to establish waiver. As mentioned, Foundation essentially responds with *Nelson v. Robinson*, 184 Kan. at 347, for the general rule that "no mere indulgence or silent acquiescence can be construed as a waiver of rights under a contract."

As far as our standard of review, "[o]rdinarily . . . whether or not a waiver has occurred in a given factual setting is a question of fact for the finder of fact." 13 Williston on Contracts § 39:21. However, because this case appears before us on a grant of summary judgment where material facts are undisputed, we may make this determination as a matter of law. *Bomhoff v. Nelnet Loan Services, Inc.*, 279 Kan. 415, 419-20, 109 P.3d 1241 (2005).

Our decision in *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, 592 P.2d 74 (1979), is of guidance on this standard and other issues. There, tenant Crestview Bowl and landlord Womer Construction entered into a written 10-year real estate lease, with an option to extend for two additional 10-year periods. Under the lease, Crestview Bowl agreed to pay monthly rent, and after 1966, to also pay any increase in property taxes. In 1971, the lease was extended for another 10 years.

Despite Crestview Bowl's obligation, it never paid any tax increase from 1967 through 1974. Even though Womer Construction knew of these failures to pay, it never informed its tenant that taxes had increased and that additional money was therefore due under the lease. Per the parties' stipulation, Womer Construction simply

"chose to remain silent as to the tax increase clause." 225 Kan. at 338.

Not until December 1974 did Womer Construction first seek to recover the increased tax payments due from Crestview Bowl since 1967. In response, Crestview Bowl sought a determination of the parties' rights and responsibilities under the lease by filing a declaratory judgment action. This court held that Crestview Bowl was liable for tax increases commencing with the year 1975. However, we also held that because Womer Construction had accepted rent payments without requesting additional payments for the tax increases which it knew were owed, it had waived all right to tax increase payments from Crestview Bowl through 1974. 225 Kan. at 341.

*Crestview Bowl* was submitted to the trial court on an agreed stipulation of facts and documentary evidence. We held:

"Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to determine de novo what the facts establish." 225 Kan. 335, Syl. ¶ 2.

The same rationale applies to determining waiver in the instant case where summary judgment has been entered on undisputed material facts. In light of the facts and resultant waiver determination in *Crestview Bowl*, that opinion may also be said to reject Foundation's "mere acquiescence" argument which is based upon our earlier decision in *Nelson v. Robinson*, 184 Kan. at 347.

Our de novo determination of what the facts establish is in agreement with the Court of Appeals. Nine straight months of Foundation's accepting late payments, without objection, is a waiver of the right to accelerate.

Issue 3: *Although Foundation has waived it right to accelerate, it has recourse against CTP for continued late payments.*

In its petition for review, Foundation argues that "the Court of Appeals decision empowers CTP to continue to flout its payment obligations, and . . . make payments even 60 or 90 days late *with*

*no recourse by Foundation.*" (Emphasis added.) CTP responds that Foundation misstates, or misunderstands, what the Court of Appeals held. It agrees with the Court of Appeals: "Foundation can 'revive' its right to accelerate the Note if it notifies CTP that future payments will no longer be accepted after the due date."

CTP's interpretation is correct. The Court of Appeals clearly set forth Foundation's recourse as follows:

"It would be inequitable to permit Foundation to accelerate the entire note without Foundation first giving notice to CTP that Foundation would no longer accept late payments. See *Holman v. Joslin*, 110 Kan. [674, 678, 204 Pac. 697 (1922)]; *Fox v. Grange*, 261 Ill. 116, 103 N.E. 576 (1913) (Vendor waived the condition of prompt payment. Vendor could withdraw his waiver and reestablish the prompt payment condition, but vendor cannot do so peremptorily but only after reasonable notice to vendee.)." (Emphasis added.) *Foundation*, 37 Kan. App. 2d at 900.

General contract law affirms the Court of Appeals' holding as well. As provided in 13 Williston on Contracts § 39:20, pp. 580-82:

"Under general principles of contract law, a party who has made a waiver affecting an executory portion of a contract may retract the waiver by notifying the other party that strict performance of any term waived will be required, unless such a retraction would be unjust because of a material change of position made in reliance on the waiver. . . .

. . . .

"Thus, although a promisor who has protected himself or herself by making the promise conditional is ordinarily entitled to have the agreement strictly enforced, if the promisor indicates that literal or strict performance will not be required, the promisor cannot, without notice and where necessary, a reasonable extension of time, begin demanding strict performance; having once waived strict compliance with the terms of a contract, a party can assert its right to strict compliance in the future only by notifying the other party of its intent to do so and by allowing a reasonable time for the other party to comply."

Accordingly, based upon CTP's singular embrace of the Court of Appeals' holding as dispositive of the recourse issue, we affirm.

Finally, after we granted review, Foundation filed a motion requesting us to take judicial notice that it has again been forced to file suit against CTP to recover payments due under the promissory note because CTP had not made its payments in February, March, and April 2008. We deny Foundation's motion as irrelevant to the issues presently before this court.

The decision of the Court of Appeals reversing the decision of the district court is affirmed. The decision of the district court is reversed.

BEIER, J., dissenting: I agree with my colleagues that a belt *and* suspenders provide pants more security than a belt *or* suspenders. Likewise, a lender maximizes security by including both an explicit acceleration clause and a separate, explicit anti-waiver clause in a promissory note. Relying on one clause to do double duty may be more risky; nevertheless, the plain language of this clause discharged such a duty in these circumstances. An implied waiver cannot defeat it. I understand the majority's inclination to encourage what it believes to be precision and thus predictability in lending relationships. I simply do not believe it necessitates the result reached in this case.

I would reverse the Court of Appeals and affirm the district court.